COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-016-CV
 
IN RE MATTHEW T. HINTERLONG,                                                       
RELATOR
 
------------
ORIGINAL PROCEEDING
------------
OPINION
ON REHEARING
------------
We deny the motions for rehearing
filed by relator and real parties in interest, withdraw our prior opinion and
judgment and substitute the following opinion.
I. Introduction
Relator Matthew T. Hinterlong seeks
mandamus relief from a trial court order denying his motion to compel discovery
of the identity of, and other information relating to, a student who provided a
crime stoppers tip to Arlington Martin High School (AMHS). The tip resulted in
Hinterlong's expulsion and placement in alternative school. In two issues,
Hinterlong contends that the trial court abused its discretion in ruling the
information privileged and not subject to discovery because: (1) AMHS's crime
stoppers program does not qualify as a crime stoppers organization under section
414.001(2) of the Texas Government Code; (2) even assuming AMHS's program
qualifies as a crime stoppers organization, the communication allegedly made by
the student was not a crime stoppers tip; and (3) the crime stoppers privilege
set forth in section 414.008 of the Texas Government Code is unconstitutional as
applied in this case because it violates the open courts provision of the Texas
Constitution. Because we hold that the crime stoppers privilege is
unconstitutional as applied in this case, we conditionally grant Hinterlong's
petition for writ of mandamus.
II. Background
Facts
In October 1999, Hinterlong was a
senior at AMHS, an honors student, and captain of the varsity tennis team. On
October 25, 1999, during lunch, a student informant provided information to an
AMHS teacher, Rynthia Clements, that Hinterlong had "either drugs or
alcohol in the trunk of his vehicle" on school property. The student
indicated Hinterlong was storing alcohol for other students for the upcoming,
out-of-town regional tennis tournament and that, therefore, the matter needed
quick attention. Clements did not recall the student informant telling her how
he or she learned this information. Clements had no personal knowledge of
Hinterlong being associated with either drugs or alcohol.
Although AMHS had a crime stoppers
committee and particular procedures existed for making a crime stoppers tip,
Clements was not a person designated to receive tips and did not serve on or
sponsor the crime stoppers committee. She had personally never been involved in
any other crime stoppers tip. Upon receiving the tip regarding Hinterlong,
Clements hand-wrote a note to an assistant principal, Mr. Henson, advising him
of the tip. Clements did not sign her name to the note, but instead obtained
permission from another teacher, Meredith Hightower, to sign Hightower's name to
the note. Clements said she did this to protect the student tipster's identity
and to ensure that the matter would be given immediate attention. She said that
she had never before used another teacher's name to report alleged student
misconduct.
Hightower explained that she
allowed Clements to use her name on the note because Clements said it was an
emergency, Clements felt the tip would be acted upon immediately if Hightower's
name was on it, and Clements believed it necessary to sign Hightower's name to
protect the identity of the student informant. Hightower knew of no other
instance at AMHS where a teacher had used another teacher's name to report
student misconduct. Although Hightower had never been approached by a student
with a crime stoppers tip, she said students were told during AMHS's daily
announcements simply to report crime stoppers tips to someone in authority.
Teachers were instructed to forward such tips to someone who could respond to
the tip.
Dr. Terri Lindsey, an assistant
principal and the AMHS crime stoppers committee sponsor, testified that students
could make crime stoppers tips to any teacher. Typically, however, the teacher
would then make a written crime stoppers tip to either Lindsey or to the crime
stoppers committee. Clements's note did not go to Lindsey or to the crime
stoppers committee. Instead, it was forwarded to vice principal Sherion Clark.
Clark received the note purportedly
signed by Hightower and, because she knew Hinterlong had tennis during his last
class period, she went to the tennis courts to find Hinterlong. She informed
Hinterlong of the tip and explained that she was required to follow up.
Hinterlong stated, "Sure, no problem," and handed her his keys.
Clark searched the back portion of
Hinterlong's Blazer, which contained an "abundance of things," such as
large speakers, an athletic bag, a tennis racket bag, clothing items, and an
eight-to-twelve ounce Ozarka water bottle. In fact, the back of Hinterlong's
Blazer was so full that Hinterlong stood by Clark as she rummaged through the
items and "as things were falling down, you might say, out of the back . .
. he reached up and kind of kept them from falling out on me or on the
ground."
The Ozarka water bottle caught
Clark's attention because the liquid remaining in the bottle was brownish, the
color of cola. There was very little liquid in the bottle, just enough to cover
the bottom of the bottle--a "thimble full." Clark opened the bottle
and smelled alcohol. Hinterlong's tennis coach arrived, smelled the liquid, and
also stated that it smelled like alcohol. Clark completed her search of
Hinterlong's Blazer, but discovered no additional alcohol or drugs.
(1)
Clark escorted Hinterlong to her
office. On the way there, she and Hinterlong had a general conversation. While
she does not remember Hinterlong using the phrase "set up," she
remembered Hinterlong saying that the incident "may involve something
else." When they arrived at her office, Clark called Hinterlong's parents
and the school's resource officer. The resource officer issued Hinterlong a
citation for minor in possession of alcohol.
Two days later, on October 27,
Clark conducted a Level I informal conference with Hinterlong and his parents.
(2) Hinterlong denied that the Ozarka water bottle was his. He said
that he was surprised that the bottle was found in his Blazer because he never
drinks Ozarka water and does not know anyone who does. Hinterlong and his
parents expressed their belief that Hinterlong had been set up by other
students.
Hinterlong's parents explained that
in July 1999 they took Hinterlong on a trip out of state to visit several
colleges. A friend of Hinterlong's who had a key to the Hinterlongs' home
allowed several other students to trespass and party at the home. When the
Hinterlongs returned from their trip, they immediately filed a report with the
Dalworthington Gardens Police Department. A memo provided by the Hinterlongs to
the police a few days after their return indicates that the trespassing students
ordered a pornographic movie, caused approximately $300 damage to the swimming
pool, and stole keys to two vehicles, later identified as Hinterlong's Blazer
and Hinterlong's brother's car. As a result of the incident, thirteen AMHS
students were ticketed or reprimanded by the police. The case remained open at
the time the tip was reported against Hinterlong because one of the students was
contesting the charges.
At the conference, the Hinterlongs
provided Clark with a copy of the July 1999 police report. They explained that
the AMHS students ticketed for trespassing at their house had reason to be
vindictive towards them. They indicated that the tip came at a suspicious time:
at a crucial point in Hinterlong's extracurricular activities and three days
before the regional tennis tournament set for October 28. Additionally, Mr.
Hinterlong stated that his son had not driven the Blazer all weekend. He said
that he personally saw the back of the Blazer and did not see the Ozarka water
bottle.
However, based on the Ozarka water
bottle found in Hinterlong's vehicle and the presumption that the thimble full
of liquid it contained was alcohol, Clark disciplined Hinterlong in accordance
with the school's "zero tolerance" policy. At the conclusion of the
informal conference, Clark recommended Hinterlong's removal from AMHS and
placement in an alternative school for the remainder of the semester. Clark's
typed report of the informal conference concludes:

        
 With evidence found in the vehicle, my decision is based on the following
 board policy, AISD Student Code of Conduct, and the MHS Student Handbook:
 
        
 A student shall be removed from class and placed in an alternative education
 program if the student commits the following on or within 300 feet of school
 property, as measured from any point on the school's real property boundary
 line, or while attending a school sponsored or school related activity: . .
 . possesses . . . an alcoholic beverage.
 

Clark said Hinterlong's possession
of the Ozarka water bottle in his Blazer mandated his expulsion under this
policy. Clark's discipline of Hinterlong also included the requirement that he
complete intervention counseling prior to returning to AMHS.
On October 28, a Level II appeal
conference was held with the building principal, Mr. Jacoby. At that conference,
Jacoby noted that Hinterlong's parents presented "compelling"
information regarding a possible "set up." However, Jacoby upheld
Hinterlong's expulsion from AMHS and placement in alternative school, citing
"concerns about the operation of the crime stoppers program, the fact the
windows on the Blazer are dark, and the parent having driven the car over the
weekend." For these reasons, Jacoby "made the decision to support the
Level I decision made by Mrs. Clark because Matt did have possession of alcohol
on school property."
Following the appeal conference,
Hinterlong's parents provided to AMHS a list of names of the students who were
ticketed or reprimanded in connection with the July trespassing incident at
their home. The Hinterlongs indicated that more students could be involved;
however, because the case was still open, police refused to verify the list of
names. Several months later, the list was shown to Clements, and she denied that
the student informant's name was on the list. No crime stoppers reward money was
ever requested or paid to the student informant regarding the Hinterlong tip.
Hinterlong was prosecuted in
municipal court. A jury acquitted him of the minor in possession of alcohol
charge because the prosecution failed to produce the expert who tested the
contents of the Ozarka water bottle. Following his acquittal, Hinterlong filed
suit against Arlington ISD, Rynthia Clements, and John Doe or Jane Roe Number 1
and John Doe or Jane Roe Number 2 (the student informant and the person or
persons who planted the Ozarka water bottle in his vehicle) for malicious
prosecution, defamation, and negligence.
Hinterlong sought to discover the
identity of, and other information relating to, the student informant. Real
parties in interest, (3) asserting the statutory
crime stoppers privilege, refused to answer requests for disclosure and
interrogatories seeking the name, address, and telephone number of the student
tipster. Real parties in interest also refused to produce documents "that
would disclose or suggest the identity of" the informant. Clements likewise
refused in her deposition to disclose the identity of the student tipster.
Finally, Hinterlong filed a motion
to compel discovery of this information and the relevant documents. Hinterlong's
motion to compel discovery raised in the trial court the same issues he raises
in this original proceeding: that the crime stoppers privilege does not apply
because AMHS's crime stoppers program is not a crime stoppers organization; that
the "tip" was not a true crime stoppers tip; and that the statutory
crime stoppers privilege as applied to him unconstitutionally violates the Texas
Constitution's open courts provision. Following an evidentiary hearing, the
trial court found that AMHS's crime stoppers program is a valid crime stoppers
organization, that the AMHS's crime stoppers organization falls within the
statutory definition of a crime stoppers organization, and that the tip made
regarding Hinterlong was a privileged crime stoppers communication. The trial
court did not make an express ruling on Hinterlong's as-applied challenge to the
constitutionality of the crime stoppers privilege under the Texas Constitution's
open courts provision. (4) The trial court denied
Hinterlong's motion to compel discovery, ruling that the student's identity was
privileged, and therefore exempt from discovery, under the crime stoppers
statute. It is from this order that Hinterlong seeks mandamus relief.
III. Due Diligence
We first address real parties in
interest's contention that Hinterlong did not exercise due diligence in seeking
mandamus relief. Real parties in interest urge us to deny Hinterlong's petition
for writ of mandamus on the ground that he has provided no explanation for his
lack of diligence in waiting four and one-half months to file his petition for
writ of mandamus. Hinterlong, however, claims that he has provided a reasonable
explanation for the delay and that, in any event, real parties in interest have
shown no harm resulting to them from the delay.
Although mandamus is not an
equitable remedy, its issuance is largely controlled by equitable principles. In
re Users Sys. Servs., Inc., 22 S.W.3d 331, 337 (Tex. 1999) (orig.
proceeding); Rivercenter Assocs. v. Rivera, 858 S.W.2d 366, 367 (Tex.
1993) (orig. proceeding); Bailey v. Baker, 696 S.W.2d 255, 256 (Tex.
App.--Houston [14th Dist.] 1985, orig. proceeding). One such
principle is that "[e]quity aids the diligent and not those who slumber on
their rights." Rivercenter Assocs., 858 S.W.2d at 367 (quoting Callahan
v. Giles, 137 Tex. 571, 155 S.W.2d 793, 795 (1941) (orig. proceeding)).
Thus, it is well-settled that mandamus relief may be denied where a party
inexplicably delays asserting its rights. See, e.g., Rivercenter
Assocs., 858 S.W.2d at 367; Bailey, 696 S.W.2d at 256.
In determining if a relator's delay
in seeking a writ of mandamus is a barrier to the issuance of the writ, a court
may analogize to the doctrine of laches, which bars equitable relief. Sanchez
v. Hester, 911 S.W.2d 173, 177 (Tex. App.--Corpus Christi 1995, orig.
proceeding). A party asserting the defense of laches must show both an
unreasonable delay by the other party in asserting its rights and harm resulting
to it because of the delay. In re Bahn, 13 S.W.3d 865, 871 (Tex.
App.--Fort Worth 2000, orig. proceeding); Sanchez, 911 S.W.2d at 177
(citing Rogers v. Ricane Enters., 772 S.W.2d 76, 80 (Tex. 1989)).
Here, counsel for Hinterlong filed
an affidavit providing a reasonable explanation for the delay. Counsel's
affidavit explains that at the conclusion of the August 16, 2001 hearing on
Hinterlong's motion to compel, he asked the official court reporter, who was
present, to prepare the record from the hearing. He paid for the reporter's
record, but did not receive it until late October 2001.
By that time, real parties in
interest had filed their own motion to compel discovery seeking information from
Hinterlong that he contended was attorney-work-product privileged. A hearing on
this motion was set for November 8, 2001. Hinterlong's counsel explained that he
wanted a ruling on that motion before he filed the petition for writ of mandamus
so he could include this discovery issue in his petition, if necessary.
Additionally, lead counsel for
Arlington ISD and Clements requested a brief moratorium on activity in the case
because her father passed away. Hinterlong's counsel agreed to accommodate her
and waited a few extra weeks to file the petition for writ of mandamus.
Hinterlong's counsel now asserts that Arlington ISD and Clements cannot use the
delay they requested against him. The trial court denied real parties in
interest's motion to compel by order dated December 20, 2001. Hinterlong filed
his petition for writ of mandamus with this court on January 14, 2002.
Under these facts, we conclude that
Hinterlong has provided a reasonable explanation for his delay in seeking
mandamus relief. See, e.g., In re Bahn, 13 S.W.3d at 871
(recognizing relator provided reasonable explanation for three-month delay in
filing petition for writ of mandamus). Further, real parties in interest have
failed to show how they have been harmed by the delay. Id. In fact,
real parties in interest requested a delay in the case and also did not oppose
Hinterlong's motion for temporary stay of the underlying case pending the
outcome of this mandamus proceeding. Accordingly, we hold that Hinterlong is not
barred from seeking mandamus relief.
IV. Availability of
Mandamus Relief
Mandamus is an extraordinary remedy
and will issue only if the trial court has committed a clear abuse of discretion
and the relator has no adequate remedy at law. Tilton v. Marshall, 925
S.W.2d 672, 682 (Tex. 1996) (orig. proceeding); Walker v. Packer, 827
S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A trial court clearly abuses its
discretion if "it reaches a decision so arbitrary and unreasonable as to
amount to a clear and prejudicial error of law." Walker, 827
S.W.2d at 839 (quoting Johnson v. Fourth Court of Appeals, 700 S.W.2d
916, 917 (Tex. 1985) (orig. proceeding)). A trial court has no discretion in
determining what the law is or applying the law to the facts. Thus, a clear
failure to analyze or apply the law correctly will constitute an abuse of
discretion and may result in appellate reversal by extraordinary writ. Walker,
827 S.W.2d at 840.
Remedy by appeal in a discovery
mandamus is not adequate where a party is required "to try his lawsuit,
debilitated by the denial of proper discovery, only to have that lawsuit
rendered a certain nullity on appeal." Id. at 841 (quoting Jampole
v. Touchy, 673 S.W.2d 569, 576 (Tex. 1984) (orig. proceeding)). Remedy by
appeal is likewise not adequate where the trial court's discovery order
disallows discovery that cannot be made a part of the appellate record, thereby
denying the reviewing court the ability to evaluate the effect of the trial
court's error. In re Colonial Pipeline Co., 968 S.W.2d 938, 941 (Tex.
1998) (orig. proceeding); Walker, 827 S.W.2d at 843-44. Remedy by
appeal may also be inadequate when it is insufficient to protect a specific
constitutional right asserted by relator. See Tilton, 925
S.W.2d at 682.
V. Crime Stoppers
Privilege
Generally, privileged matters are
not discoverable. In re Anderson, 973 S.W.2d 410, 411 (Tex.
App.--Eastland 1998, orig. proceeding). The party claiming a privilege has the
burden to establish that privilege. Jordan v. Court of Appeals, 701
S.W.2d 644, 648-49 (Tex. 1985) (orig. proceeding). Thus, in considering whether
an abuse of discretion occurred, we must determine if Arlington ISD, as the
party asserting the privilege, discharged its burden of proof as a matter of
law. See In re WHMC, 996 S.W.2d 409, 411 (Tex. App.--Houston [14th
Dist.] 1999, orig. proceeding).
A. Crime Stoppers
Organization
In his first issue, Hinterlong
challenges the trial court's finding that the student informant's identity is
privileged. Hinterlong first contends that no privilege exists because the AMHS
crime stoppers program is not a "crime stoppers organization" as
defined by the crime stoppers statute.
Chapter 414 of the Texas Government
Code defines a "crime stoppers organization" as:

        
 (A) a private, nonprofit organization that is operated on a local or statewide
 level, that accepts and expends donations for rewards to persons who report to
 the organization information about criminal activity and that forwards the
 information to the appropriate law enforcement agency; or
        
 (B) a public organization that is operated on a local or statewide level, that
 pays rewards to persons who report to the organization information about
 criminal activity, and that forwards the information to the appropriate law
 enforcement agency.

Tex. Gov't. Code Ann. §
414.001(2)(A), (B) (Vernon Supp. 2003).
Hinterlong argues that the AMHS
program does not qualify as a crime stoppers organization under subsection (B)
because it is not a "public organization," even though AMHS is a
public school. He also argues that the AMHS crime stoppers program does not
qualify as a crime stoppers organization under subsection (A) because it does
not accept or receive donations; rather, all its tip reward money comes from the
Tarrant County crime stoppers. Because we determine that AMHS's crime stoppers
program is a public organization under subsection (B), we need not consider
Hinterlong's argument that the program does not receive or accept donations as
required under subsection (A).
The statute does not define the
term "public organization," so Hinterlong cites to common definitions
of the terms "public" and "organization." See Tex.
Gov't. Code Ann. § 311.023 (Vernon 1998); City of Dallas v. Cornerstone
Bank, N.A., 879 S.W.2d 264, 270 (Tex. App.--Dallas 1994, no writ) (both
recognizing that words in statutes are given ordinary meanings unless they are
defined by the statute, used regarding particular trade or subject matter, or
constitute a term of art). The common definitions provided by Hinterlong,
however, demonstrate that the AMHS program is a public organization.
Citing Black's Law Dictionary,
Hinterlong urges us to define the term "public" as "proceeding
from, relating to, or affecting the whole body of people . . . relating to or
affecting the whole people of a . . . whole community . . . ." Hinterlong
relies upon a broad definition of the term "organization," which
includes "two or more persons having a joint or common interest . . .
." Here, the entire student body at AMHS is the "community" or
"body of people" the crime stoppers program relates to and affects,
and the AMHS crime stoppers program is comprised of two or more persons with a
common interest. Therefore, utilizing the common definitions urged by
Hinterlong, the AMHS program is a "public organization" that qualifies
as a crime stoppers organization under subsection (B).
Moreover, several campus crime
stoppers programs, such as the one established at AMHS, are set up by, and
operate under, the Tarrant County crime stoppers program. AMHS is therefore
considered a participating member of the Tarrant County crime stoppers
organization. Hinterlong argues, however, that section 414.001(2) does not
confer crime stoppers status on the AMHS program simply because it is acting
under the Tarrant County program. He cites no authority for this proposition,
and the statute does not support such an interpretation. The statute defines a
"crime stoppers organization" as a public organization, such as the
Tarrant County program in which AMHS participates, and does not limit the number
of subgroups that may participate under the umbrella of the local or statewide
crime stoppers organization. We hold that the trial court did not abuse its
discretion in determining that the AMHS crime stoppers program meets the
statutory definition of a crime stoppers organization.
B. Crime Stoppers
Tip
Hinterlong next contends that, even
if AMHS crime stoppers qualifies as a crime stoppers organization, nonetheless
the communication by the student informant was not a privileged "crime
stoppers tip" under section 414.008. Section 414.008 provides, in pertinent
part:

        
 (a) Evidence of a communication between a person submitting a report of a
 criminal act to the council or a crime stoppers organization and the person
 who accepted the report on behalf of the council or organization is not
 admissible in a court or an administrative proceeding.
        
 (b) Records of the council or a crime stoppers organization concerning a
 report of criminal activity may not be compelled to be produced before a
 court or other tribunal except on the motion of a criminal defendant to
 the court in which the offense is being tried that the records or report
 contains evidence that is exculpatory to the defendant in the trial of that
 offense.

Tex. Govt. Code Ann. § 414.008(a),
(b) (emphasis added). Unauthorized disclosure of crime stoppers privileged
information constitutes an offense:

        
 (a) A person who is a member or employee of the Council or who accepts a
 report of criminal activity on behalf of a Crime Stoppers Organization commits
 an offense if the person intentionally or knowingly divulges to a person not
 employed by a law enforcement agency the content of a report of a criminal act
 or the identity of the person who made the report without the consent of the
 person who made the report.

Id. § 414.009(a).
Hinterlong claims the student
informant's tip was not a valid crime stoppers tip because: the student did not
communicate the alleged tip to a person designated or authorized to receive
crime stoppers tips; no evidence exists that the student intended to make a
crime stoppers tip; and the AMHS crime stoppers committee did not establish a
file on the student's alleged tip or maintain any information regarding the tip.
In short, Hinterlong argues that no privilege exists because the proper crime
stoppers tip procedure was not followed in this case. We address these arguments
in turn.
AMHS's student handbook and
numerous written crime stoppers flyers indicate that students may report
information regarding illegal activities to Dr. Terri Lindsey, who is an
assistant principal and a faculty sponsor of the AMHS crime stoppers committee,
or place an anonymous call to a specified telephone number. Hinterlong points
out that the student here did not follow either of these procedures, but instead
communicated the alleged tip to a teacher, Clements, during lunch. Lindsey
testified, however, that students could go to any teacher to make a crime
stoppers tip and that students were not restricted to reporting tips to only
certain individuals. Additionally, although the student handbook and the flyers
set forth several alternative ways that a student may make a crime
stoppers tip, the materials do not indicate these are the exclusive
ways to make a report. Thus, while Hinterlong correctly asserts that the student
handbook and written flyers set forth crime stoppers tip reporting procedures
that were not followed by the student here, Lindsey's testimony that a student
could make a tip to any teacher created a fact issue concerning whether the
information provided by the student about Hinterlong was properly reported. We
will not resolve disputed fact issues in a mandamus proceeding. See In re
Ford Motor Co., 988 S.W.2d 714, 722 (Tex. 1998) (orig. proceeding).
Likewise, the statute itself does
not mandate reporting to only particularized persons to invoke the crime
stoppers privilege. To the contrary, both section 414.008 and section 414.009
characterize the disclosure triggering the privilege as one to a person
"who accepts a report of criminal activity on behalf of a crime stoppers
organization." Tex. Gov't Code Ann. §§ 414.008 - .009. Here, evidence
exists that Clements had authority to accept the student informant's tip on
behalf of the AMHS crime stoppers program. Accordingly, we hold that the trial
court did not abuse its discretion in determining that the student informant
made the tip to an appropriate school official, invoking section 414.008's crime
stoppers privilege.
Moving to Hinterlong's argument
that a student informant must intend to make a crime stoppers tip in
order to trigger the crime stoppers privilege, we find nothing in the statute
superimposing an intent requirement on the privilege. The statute protects
records of the crime stoppers organization generated after a person makes
"a report of a criminal act." Id. § 414.008(a), (b). The
intent to make a specific crime stoppers tip, as opposed to a report of a
criminal act generally, is not required.
We also reject Hinterlong's claim
that the tip at issue was not a crime stoppers tip because the AMHS crime
stoppers committee failed to create a file or maintain information relating to
the tip. Again, to invoke the privilege, the statute requires only that a person
submit a report of a criminal act to a person who accepts the report on behalf
of a crime stoppers organization. Id. Here, the student informant made
a report of what he or she believed to be a criminal act to an AMHS teacher and,
according to Lindsey, all AMHS teachers are authorized to accept such
information on behalf of the AMHS crime stoppers organization. We hold that the
trial court did not abuse its discretion in determining that the report made by
the student informant in this case constituted a crime stoppers tip, invoking
section 414.008's crime stoppers privilege.
Hinterlong also contends that
disclosure of the identity of the student informant by real parties in interest
is mandated by the rules of evidence and civil procedure. He contends that
disclosure of the identity of a person with knowledge of relevant facts
is required under rules 192.3(c),(i) and 192.5(c)(3) of the Texas Rules of Civil
Procedure and rule 501 of the Texas Rules of Evidence even if that person made
nondiscoverable, privileged communications. Tex. R. Civ. P. 192.3(c),(i),
192.5(c)(3); Tex. R. Evid. 501.
Rule 192.3, governing the scope of
discovery, provides: "[i]n general, a party may obtain discovery regarding
any matter that is not privileged and is relevant to the subject matter
of the pending action." Tex. R. Civ. P. 192.3(a) (emphasis added). While
the identity of a potential party or witness's identity is generally
discoverable, section 414.009 of the crime stoppers statute specifically
prohibits disclosure of the identity of a crime stoppers tipster. Tex. Gov't
Code Ann. § 414.009. Consequently, the identity of a crime stoppers tipster is
privileged and beyond the scope of relevant, nonprivileged discovery authorized
by 192.3. (5) See Tex. R. Civ. P.
192.3(a).
We have addressed each of
Hinterlong's arguments claiming that the crime stoppers privilege is not
applicable to the present facts; therefore, we overrule his first issue.
VI. Open Courts
Violation
In his second issue, Hinterlong
challenges the constitutionality of Texas Government Code section 414.008 as
applied to him in the present case. Specifically, he claims that the statutory
crime stoppers privilege, applied here to prevent him from discovering the
identity of the student informant, violates the open courts provision of the
Texas Constitution. See Tex. Const. Art. I,§ 13.
Real parties in interest contend
that the crime stoppers statute has already been held to be constitutional in Thomas
v. State, 837 S.W.2d 106, 113 (Tex. Crim. App. 1992). At the time the Court
of Criminal Appeals decided Thomas, the crime stoppers statute provided
no exception to the crime stoppers confidentiality privilege set forth in
section 414.008. See Act of April 30, 1987, 70th Leg., R.S.,
ch. 147, §1, 1987 Tex. Gen. Laws 316, 383 (amended 1993, 1997, 1999) (current
version at Tex. Gov't Code Ann. § 414.008 (Vernon Supp. 2002)). Thomas involved
a criminal defendant's Sixth Amendment Confrontation Clause challenge and
Fourteenth Amendment due process challenge to the constitutionality of the then
existing crime stoppers statute. Thomas, 837 S.W.2d at 109-10. The
court of criminal appeals recognized that "the confidentiality provisions
of the crime stoppers statute . . . reach too far . . . . Denial of access to
information which would have a reasonable probability of affecting the outcome
of a defendant's trial abridges a defendant's due process rights and undermines
the court's duty to vindicate Sixth Amendment rights." Id. at 112.
Consequently, after balancing the defendant's constitutional rights with the
State's interest in fostering law enforcement, the court ordered the trial court
to review the crime stoppers information in camera and to determine whether any
of the information was material. Id. at 114. Thus, the court of
criminal appeals in Thomas determined that the crime stoppers
confidentiality privilege was unconstitutional and did
abridge Thomas's due process and Sixth Amendment rights unless the trial
court, in violation of the then existing statutory crime stoppers privilege,
reviewed the crime stoppers information in camera to determine whether it
contained Brady material.
In response to the court of
criminal appeals' decision in Thomas, the legislature amended the
statute. In 1993, after the 1992 Thomas decision, the legislature
codified the Thomas opinion's in camera review procedure. See
Act of May 26, 1993, 73rd Leg., R.S., ch. 711, § 1, 1993 Tex. Gen.
Laws 2787, 2787 (amended 1997, 1999) (current version at Tex. Gov't Code Ann. §
414.008 (Vernon Supp. 2003)). Under the procedure now set forth in the statute,
a criminal defendant may file a motion asserting that the crime stoppers
privileged report or information contains exculpatory material. Tex. Gov't. Code
Ann. § 414.008(b). The trial court may then subpoena the relevant records,
review them in camera, determine whether they contain evidence exculpatory to
the defendant, and present to the defendant any exculpatory information in a
form not requiring the disclosure of the identity of the tipster unless required
by the state or federal constitution. Id. § 414.008(c), (d).
Therefore, we cannot agree with the position of real parties in interest that Thomas
ends the constitutional inquiry in the present case.
In fact, the Thomas
decision supports Hinterlong's challenge to the constitutionality of the crime
stoppers privilege as applied to him in this civil case. Thomas successfully
claimed that the then absolute crime stoppers privilege unconstitutionally
abridged his federal constitutional rights in a criminal case, and the
legislature subsequently created a statutory exception applicable to criminal
cases. Hinterlong asserts that because the crime stoppers privilege is absolute
in civil cases, providing no corollary civil case exception, it
unconstitutionally violates the open courts provision of the Texas Constitution.
Hinterlong claims that the lack of an exception to the crime stoppers privilege
in civil cases renders the statute unconstitutional as applied to him in his
civil case, just as it was unconstitutional as applied to Thomas in his criminal
case.
The open courts provision in
article I, section 13 of the Texas Constitution provides that "[a]ll courts
shall be open, and every person for an injury done him, in his lands, goods,
person or reputation, shall have remedy by due course of law." Tex. Const.
Art. I, § 13. The Texas Supreme Court explained:

        
 The provision's wording indicates the high value the drafters and ratifiers
 placed on the right of access to the courts. First, the language is mandatory:
 "shall be open" and "shall have remedy by due
 course of law." Further, it is all-inclusive: "all
 courts" are to be open; "for every person"; for all
 interests, "lands" (real property), "goods" (personal
 property), "person" (body and mind), and "reputation"
 (good name); at all times, since there is no emergency exception.

LeCroy v. Hanlon, 713
S.W.2d 335, 339 (Tex. 1986) (orig. proceeding). The open courts provision is
premised upon the rationale that the legislature has no power to make a remedy
by due course of law contingent upon an impossible condition. Moreno v.
Sterling Drug, Inc., 787 S.W.2d 348, 355 (Tex. 1990). A statute or
ordinance that unreasonably abridges a justiciable right to obtain redress for
injuries caused by the wrongful acts of another is void as amounting to a denial
of due process. Sax v. Votteler, 648 S.W.2d 661, 665 (Tex. 1983). To
establish an open courts violation, a plaintiff must satisfy a two-part test:
(1) he must show he has a well recognized common law cause of action that is
being statutorily restricted; and (2) he must show the restriction is
unreasonable or arbitrary when balanced against the legislature's actual purpose
in enacting the statute. See Owens Corning v. Carter, 997 S.W.2d 560,
573 (Tex.), cert. denied, 528 U.S. 1005 (1999); Moreno, 787
S.W.2d at 355.
A strong presumption exists that a
valid legislative enactment is constitutional. Enron Corp. v. Spring Indep.
Sch. Dist., 922 S.W.2d 931, 934 (Tex. 1996). Therefore, in analyzing the
constitutionality of a statute, we begin with a presumption that the statute is
constitutional and that the legislature has not acted unreasonably or
arbitrarily. Id. The party challenging the constitutionality of a
statute bears the burden of demonstrating that the enactment fails to meet
constitutional requirements. Id.
A. Restriction of
Cognizable Common Law Causes of Action
Hinterlong pleaded defamation,
malicious prosecution, and negligence causes of action against Arlington ISD,
Clements, the tipster, and the unknown person or persons whom he alleges planted
the Ozarka water bottle in his vehicle. (6) These
claims are all well-established common law causes of action. See Tex.
Civ. Prac. & Rem. Code Ann. § 73.001 (Vernon 1997) (codifying common law
libel cause of action); Cain v. Hearst Corp., 878 S.W.2d 577, 580 (Tex.
1994) (recognizing slander as a common law cause of action); In re W.C.,
56 S.W.3d 863, 872 n.3 (Tex. App.--Houston [14th Dist.] 2001, no
pet.) (recognizing malicious prosecution as a common law claim); Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 903 (Tex. 2000) (recognizing that
"all negligence actions are common-law claims").
Real parties in interest contend
for the first time in their motion for rehearing that, at common law, Arlington
ISD has sovereign immunity against Hinterlong's claims and that Clements has
official immunity from such claims. They further contend that the Texas Tort
Claims Act's limited waiver of immunity with regard to school districts for
injuries resulting from motor vehicle accidents is not applicable in this case. See
Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.051 (Vernon 1997). Real
parties in interest therefore contend that Hinterlong has no cognizable common
law claims and that therefore the open courts guarantee is not implicated.
Real parties in interest fail to
consider, however, that regardless of his claims against Arlington ISD and
Clements, Hinterlong has pleaded cognizable common law claims against both the
tipster and the person or persons who planted the Ozarka water bottle in his
vehicle; neither of these parties is entitled to immunity.
Additionally, real parties in
interest fail to distinguish between immunity from suit and immunity from
liability, which are two distinct principles. See Tex. Dep't of Transp. v.
Jones, 8 S.W.3d 636, 638 (Tex. 1999). While immunity from suit (sovereign
immunity) abridged claims at common law, immunity from liability (official
immunity) is an affirmative defense to common law claims that must be pleaded or
it is waived. See Green Int'l, Inc. v. State, 877 S.W.2d 428, 436-37
(Tex. App.--Austin 1994, writ dism'd) (holding sovereign immunity is common-law
doctrine that preceded Texas Constitution so application of doctrine to preclude
litigation of breach of contract and quantum meruit claims does not violate open
courts provision); Jones, 8 S.W.3d at 638 (recognizing distinction
between immunity from liability, which is an affirmative defense that must be
pleaded or it is waived, and immunity from suit, which is jurisdictional and
requires complaining party to establish state's consent to be sued); Hayes
v. Patrick, 71 S.W.3d 516, 521 (Tex. App.--Fort Worth 2002, no pet.)
(noting official immunity is common law affirmative defense that protects
government officers and employees from liability for conduct that would
otherwise be actionable). Absent both pleading and proof of immunity, Clements
can be held liable under Hinterlong's claims. See Univ. of Houston
v. Clark, 38 S.W.3d 578, 580 (Tex. 2000) (noting that official immunity is
affirmative defense that protects government employees from personal liability,
and that, to be entitled to summary judgment on immunity defense, employee must
conclusively prove each element of defense); see also Myers v. Doe, 52
S.W.3d 391, 395-96 (Tex. App.--Fort Worth 2001, pet. denied) (addressing school
district employees' entitlement to immunity if all elements under section
22.051(a) of the Education Code are established); see also Tex. Educ.
Code Ann. § 22.051(a) (Vernon 1996) (stating that professional school district
employees are not personally liable for actions incident to or within the scope
of duties performed that involve the exercise of judgment or discretion, unless
there is an excessive use of force or negligent discipline resulting in bodily
injury to students).
Clements is also not cloaked with
immunity from personal liability where her actions are not incident to or within
the scope of her professional duties or while she is performing duties that are
ministerial and, therefore, do not involve the exercise of judgment or
discretion. See Tex. Educ. Code Ann. § 22.051; Myers, 52
S.W.3d at 396; cf. Kassen v. Hatley, 887 S.W.2d 4, 11 (Tex. 1994)
(holding that government-employed medical personnel are not immune from tort
liability if the character of the discretion they exercise is medical and not
governmental). Hinterlong's pleadings allege that Clement's acts and omissions
involved ministerial duties and that, at certain times, Clements acted outside
the scope of her employment or official duties. Hinterlong has, therefore,
pleaded cognizable common law claims against Clements, subject to her
affirmative defense of immunity.
Accordingly, we conclude that
Hinterlong has asserted well-established common law causes of action against
Clements, the tipster, and the person or persons who planted the Ozarka water
bottle. Regardless of whether the trial court later holds that Arlington ISD is
sovereignly immune from suit, Hinterlong's assertion of these common law causes
of action against Clements, the tipster, and the person or persons who planted
the Ozarka water bottle satisfy the open courts predicate of assertion of
well-established common law causes of action.
Hinterlong's mere pleading of
common law causes of action, however, does not end our analysis. Hinterlong must
possess "a justiciable right to obtain redress for injuries caused by the
wrongful acts of another." See Sax, 648 S.W.2d at 665. The supreme
court has explained that, in the context of a criminal defendant seeking civil
redress, the defendant's "illegal conduct . . . is the cause in fact of any
injuries flowing from the conviction, unless the conviction has been
overturned." Peeler v. Hughes & Luce, 909 S.W.2d 494, 498
(Tex. 1995).
In Peeler, a criminal
defendant pleaded guilty, but then sued her lawyer for legal malpractice. The
supreme court held that, although the client made a prima facie case of
malfeasance by showing her attorney failed to communicate an immunity offer to
her, nonetheless, she could not recover unless she first established that she
had been exonerated of the crime. Id. at 497-98. The court reasoned
that, absent exoneration of the crime, she could not show her attorney's
actions, even if negligent, were the cause of her injuries. Id. at 498.
Here, Hinterlong was acquitted of
the minor in possession charge. Had Hinterlong not been acquitted, he would
possess no justiciable common law right to obtain redress because he would not
be able to show that the wrongful act of another, as opposed to the criminal
conduct for which he was convicted, caused his injuries. In this instance, as a
matter of law, application of the statutory crime stoppers privilege to him
would not violate the open courts provision of the Texas Constitution. See
id.
Applying the supreme court's
causation reasoning in Peeler to a high school crime stoppers tip
situation, a student's mere exoneration of criminal charges does not necessarily
give rise to "a justiciable right to obtain redress for injuries caused by
the wrongful acts of another." See Sax, 648 S.W.2d at 665. The
bare fact of a student's exoneration does not imply that any civil injuries
suffered by the student were caused by the wrongful acts of another. A
student could be exonerated for a variety of procedural or substantive reasons
unrelated to any wrongful or nonwrongful acts of another. The violation of
school policy, here possession of a thimble full of alcohol, therefore remains
the sole proximate cause of any civil damages the student suffers unless the
student pleads and offers prima facie proof that his injuries were caused by
the wrongful acts of another. Thus, to meet his burden of showing that the
application of the crime stoppers privilege unconstitutionally abrogated his
cognizable common law causes of action, Hinterlong was required to plead and to
offer prima facie proof that his injuries were caused by the wrongful acts of
another, that is, real parties in interest, the tipster, or the person or
persons who planted the Ozarka water bottle. Accord Peeler, 909 S.W.2d
at 498 (recognizing no tort recovery is available if defendant's illegal acts
remain the sole proximate cause of his injuries); see also Earle v.
Ratliff, 998 S.W.2d 882, 889 (Tex. 1999) (requiring party asserting open
courts violation as basis for avoiding summary judgment on limitations in 4590i
suit to raise a fact issue on the applicability of the provision).
Hinterlong pleaded that real
parties in interest were negligent in acting on the tip and that real parties in
interest and the unknown defendants maliciously prosecuted and defamed him,
causing him to suffer extreme mental anguish, public humiliation, and
embarrassment; causing injury to his reputation, health, and character; causing
him to be suspended from AMHS; and causing him to be required to attend
alternative school. Hinterlong clearly pleaded a right to redress for injuries
caused by the wrongful acts of another.
In support of his motion to compel,
Hinterlong provided the depositions of Clements, Hightower, Lindsey, and Clark.
He also provided the exhibits referenced in each of these depositions. Jacoby's
record of Hinterlong's appeal conference indicates that the Hinterlongs
presented "compelling" evidence that Hinterlong was "set
up." The keys to Hinterlong's Blazer were stolen by AMHS students during
the July trespassing incident. The Hinterlongs pressed charges against
approximately thirteen AMHS students. Approximately three months later, three
days before the regional tennis tournament, a tip was given to Clements that
Hinterlong was "hoarding" alcohol in the trunk of his vehicle for the
regional tennis tournament. Hinterlong's Blazer did not have a trunk and only a
thimble full of a substance never proved to be alcohol was found, which is
hardly a stockpiling or hoarding. Moreover, the tip was not made in accordance
with the typical AMHS crime stoppers procedures. Although the unique path the
tip followed does not invalidate its crime stoppers tip status, it certainly
supports Hinterlong's contention that the tip was a set-up involving
"planted" evidence. Finally, Hinterlong cooperated with Clark in her
search of his Blazer and indicated as they walked to her office that "this
may involve something else." We hold that this evidence presented by
Hinterlong constitutes a prima facie showing that his alleged injuries were
caused by the wrongful acts of Clements, the tipster, and the person or persons
who planted the Ozarka water bottle in his vehicle. We further hold that
Hinterlong, having been exonerated of the minor in possession charge and having
come forward with prima facie evidence that his claimed injuries were caused by
the wrongful acts of another, has satisfied his burden of showing that he
possesses cognizable common law causes of action against Clements, the tipster,
and the person or persons who planted the Ozarka water bottle for malicious
prosecution, defamation, and negligence.
We next address whether the crime
stoppers privilege restricts Hinterlong's common law causes of action. Clearly
it does. The privilege operates as an almost complete bar to Hinterlong's suit
against the tipster and the person or persons who planted the Ozarka water
bottle. The privilege likewise restricts Hinterlong's claims against Clements
because the identity of the tipster and information provided by the tipster may
be critical to Hinterlong's tort claims.
B. Restriction
of Causes of Action Unreasonable
When Balanced Against Statutory Purpose
Having determined that the crime
stoppers privilege restricts Hinterlong's cognizable common law claims, we next
determine whether the abrogation of those claims is arbitrary or unreasonable
when balanced against the legislature's actual purpose in enacting the statute. Lucas
v. United States, 757 S.W.2d 687, 690 (Tex. 1988); Sax, 648 S.W.2d
at 665-66. In making this determination, we consider both the general purpose of
the statute and the extent to which the litigant's right to redress is affected.
Sax, 648 S.W.2d at 665-66.
The extent of the abrogation of
Hinterlong's right to redress is almost total. He cannot prosecute his common
law causes against either Clements, the tipster, or the person or persons who
planted the Ozarka water bottle for "injury done him, in his . . . person
or reputation" without learning the tipster's identity. His inability to
obtain discovery concerning how the tipster obtained the information provided to
Clements severely impedes Hinterlong's prosecution of his common law causes of
action against these parties.
The open courts provision test
balances the legislature's actual purpose in enacting a law against that law's
interference with the individual's right of access to the courts. LeCroy,
713 S.W.2d at 341. In addressing a "facial" or "per se" open
courts constitutional challenge to legislative action restricting common law
remedies for well established common law causes of action for injuries to one's
lands, goods, person or reputation, courts examine whether the legislature
reasonably substituted another remedy or whether legislative restriction of the
common law causes of action was a reasonable exercise of the police power in the
interest of the general welfare. See Lebohm v. City of Galveston, 154
Tex. 192, 195-96, 275 S.W.2d 951, 955 (1955) (op. on reh'g) (involving facial
challenge to legislatively approved city charter provision exempting city from
all liability for injuries caused by defective streets); see also Owens
Corning, 997 S.W.2d at 573-74 (involving facial challenge to Texas'
borrowing statute); Hanks v. City of Port Arthur, 121 Tex. 202, 205, 48
S.W.2d 944, 945 (1932) (involving facial challenge to ordinance exempting Port
Arthur from all liability for injuries caused by defective streets). In
addressing an "as-applied" open courts constitutional challenge to
legislative action restricting common law remedies for well established common
law causes of action for injury to one's lands, goods, person or reputation,
courts also examine whether the restriction is unreasonable or arbitrary when
balanced against the legislative purpose for the statute, including a purpose of
promoting general public welfare through the exercise of police power. See
Sax, 648 S.W.2d at 666 (involving challenge to statute of limitations set
forth in insurance code article 5.82 [article 4590i's predecessor] as
applied to minors); see also Weiner v. Wasson, 900 S.W.2d
316, 318-19 (Tex. 1995) (involving challenge to article 4590i's statute of
limitations as applied to minors). That is, a statutory restriction of
a well established common law cause of action may be facially or per se
constitutional under the Texas Constitution's open courts provision, but
nonetheless violate the open courts provision of the Texas Constitution as
applied to a particular category of people if the restriction of the common
law cause of action is unreasonable when balanced against the purpose of the
statute. See Sax, 648 S.W.2d at 667 (recognizing that the "purpose
and basis for article 5.82 are legitimate" but nonetheless holding the
restriction unreasonable as applied to minors); Weiner, 900 S.W.2d at
318 (same).
Here, the legislature has
substituted no remedy in place of its abrogation of Hinterlong's common law
causes of action for malicious prosecution, defamation, or negligence. Thus, the
statutory abrogation of these common law causes of action is not rendered
reasonable based on a substitute remedy. Cf. Tex. Workers' Comp. Comm'n v.
Garcia, 893 S.W.2d 504, 510 (Tex. 1995) (holding workers' compensation
statute does not unreasonably cut off common law claims because it provides a
substitute remedy).
To determine a statute's purpose,
we consider the "object sought to be obtained" by the statute. See
Tex. Gov't Code Ann. § 311.023 (Vernon 1998). The purpose served by the crime
stoppers statute is to foster the detection of crime and to encourage persons to
report information about criminal acts. Tex. Gov't Code Ann. § 414.005(2)
(Vernon Supp. 2003); Thomas, 837 S.W.2d at 113. Crime stoppers tips are
to help law enforcement agencies detect and combat crime by increasing the flow
of information to and between law enforcement agencies. Id. §
414.005(5). Additionally, according to the statute, reward money is to be paid
to those persons who report criminal activity. Id. at § 414.010-.011.
There is no question that the crime stoppers statute here has a valid basis and
purpose, i.e., is a valid exercise of police power for general public welfare,
that being to promote, and to encourage through the payment of reward money, legitimate
tips concerning criminal activity. See Sax, 648 S.W.2d at 667
(recognizing in as-applied open courts challenge that the "purpose and
basis for article 5.82 are legitimate"); Owens Corning, 997 S.W.2d
at 574 (holding legislature's adoption of borrowing statute was valid exercise
of police power where statute restricted time period for bringing suit in Texas
to time period allowed in state where cause of action arose).
The question then, pursuant to
Hinterlong's as-applied open courts challenge, is whether the application of the
crime stopper statutory privilege to restrict common law causes of action
brought by a student who has been exonerated of criminal charges and who has
pleaded and offered prima facie proof of a right of redress for the wrongful
conduct of another, is arbitrary or unreasonable when balanced against the
legitimate purpose of the statute. We hold that it is. In Hinterlong's civil
suit, application of the statutory crime stoppers privilege as a complete bar to
disclosure of AMHS's crime stoppers records, including the tipster's identity,
and the resultant restriction of Hinterlong's common law causes of action does
not promote the purpose of the crime stoppers statute. In fact, this application
of the statute in the context of AMHS's zero tolerance policy actually thwarts
the purpose of the crime stoppers statute. Such an application, by totally
insulating the tipster, promotes reports of set up criminal activity involving
"planted" evidence on high school campuses. A student could place a
thimble full of alcohol in another student's locker, car, notebook, purse, or
backpack, and, as explained by Clark, cause the student's automatic expulsion
pursuant to the zero tolerance policy. A tipster, without risking disclosure of
his or her identity or any accountability in a civil lawsuit, could place
alcohol in another student's possession before school, at lunch, or during a
break, and then make a crime stoppers tip, ensuring the student's expulsion and
ineligibility for a football play-off game, a track meet, a regional tennis
tournament, or cheerleader tryouts. The purpose of the crime stoppers statute is
to promote legitimate reports of criminal activities, not to shield a
student who for personal gain or retaliatory motives makes a set up tip to
achieve expulsion of a rival or a competitor.
In fact, outside the ambit of the
public school zero tolerance policy, nonlegitimate crime stoppers tips are not
acted upon. Police must independently corroborate information provided by an
anonymous tipster, including a crime stoppers tipster, in order to justify even
an investigative detention based on the tip. See, e.g., Florida v. J.L., 529
U.S. 266, 273-74, 120 S.Ct. 1375, 1380 (2000) (holding that an anonymous tip
must be corroborated to provide reasonable suspicion justifying an investigatory
stop); Parish v. State, 939 S.W.2d 201, 202-05 (Tex. App.--Austin 1997,
no pet.) (same). Consequently, nonlegitimate or set up crime stoppers tips that
cannot be corroborated are not acted upon and are not rewarded. Thus, in cases
involving crime stoppers tips occurring outside the unique context of public
schools' zero tolerance setting, the issue of civil damages for illegitimate or
set up tips is unlikely to ever arise.
Finally, we note that when the
legislature enacted the crime stoppers statute in 1987, zero tolerance policies
did not exist at our public schools. Thus, the legislature could not have
anticipated the juxtaposition between the statutory crime stoppers privilege and
schools' zero tolerance policies, resulting in the opportunity for abuse of the
crime stoppers tip program that allegedly occurred here. The statute was
certainly not intended for use as a shield from accountability for set up tips
made for personal or retaliatory reasons. See Tex. Gov't Code Ann. §
311.023 (Vernon 1998); Finley v. Steenkamp, 19 S.W.3d 533, 542 (Tex.
App.--Fort Worth 2000, no pet.) (recognizing court must consider the
consequences that would follow from its construction of a statute and avoid
absurd results).
We hold that the purpose of the
crime stoppers privilege does not justify, in the limited public school zero
tolerance setting, the resultant almost total abrogation of Hinterlong's common
law causes of action against the tipster and the person or persons who planted
the Ozarka water bottle or the partial abrogation of Hinterlong's common law
causes of action against Clements. See Lucas, 757 S.W.2d at 691; Sax,
648 S.W.2d at 665-66. Hinterlong met his burden of establishing that the
application of the crime stoppers privilege to him in this case violates the
Texas Constitution's open courts provision by restricting his recognized common
law causes of action against Clements, the tipster, and the person or persons
who planted the Ozarka water bottle in a way that is arbitrary or unreasonable
when balanced against the legislative purpose in enacting the statute. Thus, we
hold that the trial court abused its discretion by refusing to declare the
absolute crime stoppers privilege set forth in section 414.008 of the Texas
Government Code unconstitutional as applied to Hinterlong in the present case. See,
e.g., Walker, 827 S.W.2d at 840 (recognizing a trial court has no
discretion in determining what the law is or applying the law to the facts).
C. Appropriate
Remedy
Although the crime stoppers
privilege, as applied to Hinterlong in this case, violates the open courts
provision of the Texas Constitution, Hinterlong nonetheless is not entitled to
mandamus relief unless he possesses no adequate remedy at law. Without knowing
the identity of the tipster or how the tipster learned Hinterlong was supposedly
hoarding alcohol in his trunk, Hinterlong will be forced "to try his
lawsuit, debilitated by the denial of proper discovery, only to have that
lawsuit rendered a certain nullity on appeal." Id. at 841. Any
judgment against an unnamed, anonymous tipster or person who planted the Ozarka
water bottle is, in effect, a "certain nullity." See id.
Moreover, the trial court's discovery order here disallowed discovery that
cannot be made a part of the appellate record, thereby denying us the ability on
appeal to evaluate the effect of the trial court's error. See In re Colonial
Pipeline, 968 S.W.2d at 941. Finally, Hinterlong's remedy of this error by
appeal is inadequate because he is constitutionally guaranteed that the Texas
courts "shall be open, and every person for any injury done him, in his
lands, goods, person or reputation, shall have remedy by due course of
law." Tex. Const. Art. I, § 13 (emphasis added); see also Tilton,
925 S.W.2d at 682. Because Hinterlong has no adequate remedy at law, mandamus
relief is appropriate.
We now address the scope of the
mandamus relief to be granted Hinterlong. Hinterlong, of course, requests that
we mandamus the trial court to order real parties in interest to comply with his
discovery requests. We are not convinced, however, that this is the proper
remedy.
We understand AMHS's unfortunate
need for a zero tolerance policy. We also understand the usefulness of a crime
stoppers program at AMHS and the need for tipster anonymity. We note that the
court of criminal appeals in Thomas, although finding application of
the crime stoppers privilege to be unconstitutional, did not order Thomas's
unlimited access to the privileged material. Instead, it ordered the trial court
to conduct an in camera review of the information and to determine if the
information contained Brady evidence. Thomas, 837 S.W.2d at
114.
The Amarillo court of appeals in Martin
v. Darnell followed the Thomas in camera review procedure in a
mandamus action. Martin v. Darnell, 960 S.W.2d 838, 845 (Tex.
App.--Amarillo 1997, orig. proceeding). In Martin, a criminal defendant
sought discovery of a prosecution witness's financial records. The witness was
an employee in the records division of the Lubbock Police Department and was
used by the department in an undercover investigation into the illegal
dissemination of police accident reports. Id. at 840. The defendant
alleged that he had paid the witness to provide him with police reports before
the beginning of the investigation and sought discovery of the witness's bank
records and income tax returns. Id. Ultimately, the Amarillo court held
that the Thomas in camera review procedure would "satisfy the
government's interest in protecting its witnesses while satisfying [the
defendant's] Sixth Amendment rights of confrontation and compulsory
process." Id. at 845.
Additionally, Rule 508 of the Texas
Rules of Evidence provides guidance. It is titled, "Identity of
Informer," and, after generally recognizing that the identity of an
informant may be privileged, provides:

        
 (c) Exceptions.
        
 . . . .
 
        
 (2) Testimony on merits. If it appears from the evidence in the
 case or from other showing by a party that an informer may be able to give
 testimony necessary to a fair determination of a material issue on the
 merits in a civil case to which the public entity is a party . . . and the
 public entity invokes the privilege, the court shall give the public entity
 an opportunity to show in camera facts relevant to determining whether the
 informer can, in fact, supply that testimony. The showing will ordinarily be
 in the form of affidavits, but the court may direct that testimony be taken
 if it finds that the matter cannot be resolved satisfactorily upon
 affidavit. If the court finds that there is a reasonable probability that
 the informer can give the testimony, and the public entity elects not to
 disclose the informer's identity, the court in a civil case may make any
 order that justice requires . . . . Evidence submitted to the court shall be
 sealed and preserved to be made available to the appellate court in the
 event of an appeal, and the contents shall not otherwise be revealed without
 consent of the public entity. All counsel and parties shall be permitted to
 be present at every stage of proceedings under this subdivision except a
 showing in camera, at which no counsel or party shall be permitted to be
 present.
 

Tex. R. Evid. 508(c)(2).
We, like the Thomas and Martin
courts, adopt a version of an in camera review procedure here. We agree that
authorizing unlimited access to crime stoppers information would
unnecessarily compromise public high schools' interest in fostering the
reporting of suspected criminal activity. See Thomas, 837 S.W.2d at
114. Both AMHS's interests and Hinterlong's constitutional rights under the
Texas Constitution's open courts provision may be satisfied here through
application of the in camera procedures set forth in Texas Rule of Evidence 508.
See Tex. R. Evid. 508.
Applying rule 508 to the present
facts, the public entity, here, Arlington ISD and Clements on Arlington ISD's
behalf, has invoked the crime stoppers privilege. Hinterlong clearly has
established that the tipster "may be able to give testimony necessary to a
fair determination of a material issue on the merits in a civil case":
specifically, testimony as to how and from whom the tipster purportedly learned
or heard Hinterlong was hoarding alcohol in the trunk of his car so that
Hinterlong may determine any link between the tipster and the allegedly
disgruntled student trespassers or any other person or persons who may have
planted the Ozarka water bottle in his vehicle. Thus, the trial court shall
order real parties in interest to submit in camera an affidavit from the student
tipster demonstrating how he or she learned of purported stockpiling of alcohol
in Hinterlong's trunk.
If the student tipster's affidavit
demonstrates that the tipster possessed personal knowledge of the information
provided to Clements, the trial court may order disclosure of any information
provided by the tipster necessary to a fair determination of a material issue on
the merits in Hinterlong's case, including disclosure of the tipster's identity.
See Tex. R. Evid. 508(c)(2) (authorizing trial court to make any order
that justice requires if the court finds that there is a reasonable probability
that the informant can give testimony necessary to a fair determination of a
material issue on the merits in a civil case); Tex. Gov't Code Ann. §
414.008(c), (d) (authorizing trial court disclosure of tipster's identity in
criminal case when "the state or federal constitution requires the
disclosure"). The trial court shall take appropriate means to ensure that
the tipster's identity is protected, however, unless the trial court believes
disclosure is necessary to a fair determination of a material issue on the
merits in Hinterlong's case.
If, however, the tipster's
affidavit reveals that the tip was based on hearsay, then the trial court shall
order disclosed to Hinterlong the name of the person or persons providing the
information to the tipster. See Tex. R. Evid. 508(c)(2). The trial
court may, if necessary to a fair determination of a material issue on the
merits in Hinterlong's case or if the trial court is not satisfied that the
information provided is reasonably reliable, order that the tipster's identity
be disclosed and shall make any other order justice requires. See Tex.
R. Evid. 508(c)(2)-(3); see also Tex. Gov't Code Ann. § 414.008(c),
(d). Any evidence that the trial court determines shall not be disclosed shall
be sealed and made part of the trial court's record in this case. Accord
Thomas, 837 S.W.2d at 114; Tex. R. Evid. 508.
Real parties in interest contend on
rehearing that this remedy is improper because: (1) it orders them to produce a
document that is not within their possession, custody, or control; and (2) it
arguably exposes them to criminal punishment under section 414.009. See
Tex. R. Civ. P. 192.3(b) (requiring parties to produce documents that are within
their "possession, custody, or control"); Tex. Gov't Code Ann. §
414.009(a), (b) (making it a class A misdemeanor for any person who accepts a
report of criminal activity on behalf of a crime stoppers organization to
intentionally or knowingly divulge the content of the crime stoppers report or
the informant's identity, without the informant's consent).
As recited above, Rule 508
specifically authorizes the use of affidavits to place testimony of an informer,
like the tipster here, before the trial court for an in camera review. Tex. R.
Evid. 508(c)(2). Nothing in Rule 508 indicates that only affidavits already in
the possession, custody and control of the public entity are to be utilized. Id.
To the contrary, the Rule's provision that ordinarily the public entity should
be allowed the opportunity to show facts in camera via an affidavit suggests
that this vehicle, that is the affidavit of the informer, impinges the least on
the asserted privilege. Id. Real parties in interest may certainly
decline the opportunity to present an affidavit from the tipster to the trial
court for an in camera review. In that case, based on our determination that the
absolute crime stoppers privilege as applied in this case violates the open
courts provision of the Texas Constitution, the trial court shall order the
tipster's identity disclosed. See Tex. Gov't Code Ann. § 414.008(c),
(d).
As for real parties in interest's
contention that disclosure of the tipster's identity arguably exposes them to
criminal punishment under section 414.009, we disagree for several reasons.
First, it is only unauthorized disclosure, or disclosure without the informant's
consent, that invokes these penalties. See id. § 414.009(a).
If the tipster provides the affidavit, it follows that the penalties would not
be invoked.
Additionally, the disclosure
ordered by this court would not subject real parties in interest to the criminal
and other penalties set forth in section 414.009 because the disclosure itself
would be privileged. The absolute immunity of parties and witnesses from
subsequent liability for their testimony in judicial proceedings is well
established at common law. Briscoe v. LaHue, 460 U.S. 325, 331-35, 103
S. Ct. 1108, 1113-15 (1983). Any communication, even perjured testimony, made in
the course of a judicial proceeding, cannot serve as the basis for a suit in
tort. Laub v. Pesikoff, 979 S.W.2d 686, 689 (Tex. App.--Houston [1st
Dist.] 1998, pet. denied); see also Bird v. W.C.W., 868 S.W.2d 767,
771-72 (Tex. 1994) (concluding that communications made during the course of
judicial proceedings are privileged). Because the proper administration of
justice requires full and free disclosure from witnesses unhampered by fear of
retaliatory lawsuits, Texas courts have consistently applied the privilege to
claims arising out of communications made in the course of judicial proceedings,
regardless of the label placed on the claim and even though the communications
might otherwise subject a witness to statutory liability. See Bird, 868
S.W.2d at 772; Laub, 979 S.W.2d at 690; Leigh v. Parker, 740
S.W.2d 101, 103-04 (Tex. App.--Austin 1987, writ denied) (holding that
psychologist witness was protected against liability for statements made during
course of judicial proceedings and ordered by trial court, superseding statutory
liability for psychologist's disclosure of privileged patient information).
Accordingly, any disclosure ordered and made during the course of these judicial
proceedings would be privileged.
Finally, because we have determined
that the statutory crime stoppers privilege, as applied in this case, violates
the open courts provision of the Texas Constitution, it follows that the
penalties provided in section 414.009 for violating the statutory privilege are
likewise unenforceable as applied in this case. An unconstitutional statute is
void and cannot provide a basis for any right or relief. Accord Reyes v.
State, 753 S.W.2d 382, 383-84 (Tex. Crim. App. 1988) (noting in a per se
constitutional challenge that an unconstitutional statute "is invalid and
imposes no duties, confers no rights, creates no office, bestows no power,
affords no protection, and justifies no acts performed under it . . . ."); cf.
Bullock v. ABC Interstate Theatres, Inc., 557 S.W.2d 337, 340-41 (Tex. Civ.
App.--Austin 1977, writ ref'd n.r.e.) (concluding that once statutory tax was
declared unconstitutional, the exemption created by payment of such tax likewise
became inoperative), cert. denied, 439 U.S. 894 (1978). We therefore
reject real parties in interest's suggestion that disclosure will expose them to
criminal punishment.
VII. Conclusion
In summary, we conclude that the
crime stoppers privilege, as applied to Hinterlong under the facts of this case,
unreasonably and arbitrarily restricts his common law claims when those claims
are balanced against the purpose of the statute. Accordingly, we hold that the
statute, as applied in this case, violates the open courts provision of the
Texas Constitution. We conditionally grant Hinterlong's petition for writ of
mandamus and direct the trial court to vacate its August 24, 2001 order denying
Hinterlong's motion to compel the production of evidence regarding the student
informant's identity and other relevant information surrounding the crime
stoppers tip. See Tex. R. App. P. 52.8(c). We order the trial court to
conduct the rule 508(c)(2) in camera inspection, outlined above, within thirty
(30) days of the date of this opinion. See Tex. R. Evid. 508(c)(2). We
are confident the trial court will vacate its order and will conduct the
necessary rule 508 procedures as we have directed. Our writ will issue only if
the trial court refuses to do so.
 
                                                       
   SUE WALKER
                                                       
   JUSTICE
 
PANEL A: HOLMAN and WALKER, JJ.;
and DAVID L. RICHARDS, J. (Sitting by Assignment).
DELIVERED: July 3, 2003

1. Fireworks were also found in a bag in Hinterlong's
vehicle, and Hinterlong received a citation for their possession. The record
indicates, however, that Hinterlong's expulsion and placement in an alternative
school resulted from his possession of alcohol, not fireworks. Hinterlong was
required to complete "intervention counseling" regarding alcohol prior
to readmission to AMHS. Additionally, Hinterlong's expulsion from AMHS was
upheld through the administrative appeals process "because Matt did have
possession of alcohol on school property."
2. No tape recording or transcription of the informal
conference exists. Clark attempted to record the informal conference, but the
tape malfunctioned. She informed the Hinterlongs of this and offered to
re-conduct the conference, but they indicated that would not be necessary.
Clark's deposition and her typed report of the conference, however, reflect the
facts recited above.
3. Arlington ISD and Clements are the real parties in
interest in this original proceeding.
4. Hinterlong expressly raised his as-applied
constitutional challenge in his motion to compel and at the hearing on his
motion to compel. Thus, by denying Hinterlong's motion, the trial court
implicitly overruled the constitutional challenge. See Tex. R. App. P.
33.1(a)(2)(A).
5. Section 414.008 cloaks "records" of a crime
stoppers organization with a privilege. When section 414.008 is read in
conjunction with section 414.009, making it a class A misdemeanor to divulge the
identity of an informant, it is clear that the privileged "records"
necessarily include the tipster's identity. Tex. Gov't Code Ann. §§
414.008-.009.
6. Real parties in interest concede that the crime
stoppers privilege is not an immunity statute and that the tipster is not immune
from suit.