**Deane Bostick MARTIN, Relator,**

v.

**The Honorable Jim B. DARNELL, Respondent.**

**No. 07–97–0210–CV.**

Court of Appeals of Texas, Amarillo.

Nov. 6, 1997.

---

Brower and Slavin, Ken Slavin, El Paso, Thompson & Thomas, George L. Thompson, III, Lubbock, for appellant.

Craig, Terrill & Hale, H. Grady Terrill, Eric G. Walraven, Lubbock, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

*ORIGINAL PROCEEDING*

BOYD, Chief Justice.

In this original proceeding, a prosecution witness seeks a writ of mandamus directing

the trial court to quash a defendant's subpoenas duces tecum. It presents the question of the ability of a defendant in a criminal proceeding to obtain pretrial discovery from prosecution witnesses. For reasons stated below, we conditionally grant relator's petition.

Relator Deane Bostick Martin (Martin) was a civilian employee in the records division of the Lubbock Police Department. Beginning in September 1996, Martin was also used by the Department in an undercover investigation into the illegal dissemination of police accident reports. In the criminal prosecution giving rise to this mandamus proceeding, the State seeks to prove that Thomas Stangel engaged in a criminal enterprise with the object of bribing Martin to illegally obtain police reports. In defense of that charge, Stangel and his co-defendants [1] have alleged that Martin accepted payment for copies of reports before the Department's investigation began and/or did not report all of the payments made during the investigation. As support for that argument, Stangel seeks to obtain the financial records of Martin for the five years preceding February 1997. Stangel served a subpoena duces tecum on Martin directing her to appear at a pretrial hearing on February 28, 1997, and produce the following records:

> [A]ll her income tax returns, 1099 forms and any and all other documents concerning payment of any monies to her for the past (5) years; and all bank records and credit card records for the past (5) years; and all personal notes, diaries and journals for the past (5) years; and any and all records pertaining to all bankruptcy proceedings filed by Deane Martin and/or her husband, Wayne Martin.

Stangel also served subpoenas duces tecum on three financial institutions seeking the previous 12 months records for specific accounts held by Martin. Over the ensuing months, Martin filed four separate motions, each seeking to quash all of the subpoenas and for a protective order. The motions asserted several theories, discussed in greater detail below. We will measure the trial court's action against the final motion filed July 18, 1997. After two hearings at which the subpoena and motion were discussed, but Martin did not testify, the respondent trial court overruled Martin's motion, thus prompting this proceeding.

■ Pursuant to § 22.221 of the Government Code, this court's jurisdiction includes mandamus proceedings in criminal cases. *Dickens v. Second Court of Appeals,* 727 S.W.2d 542, 548 (Tex.Crim.App.1987) (orig. proceeding). The Court of Criminal Appeals has followed the traditional two part test for determining a relator's entitlement to mandamus relief. That test requires the relator to establish 1) she has no adequate remedy at law and 2) she seeks to compel a ministerial act, or the trial court has clearly abused its discretion. *Dickens,* 727 S.W.2d at 550. This is the same test used in civil cases. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding). It is against this standard we must evaluate Martin's petition.

■ The subpoenas were requested and issued pursuant to Chapter 24 of the Code of Criminal Procedure. That chapter authorizes a defendant or the State to obtain a subpoena to secure the presence of witnesses whose testimony is material to their case. Tex.Code Crim.Proc.Ann. art. 24.01–.29 (Vernon 1989 & Supp.1997). Issuance of the subpoena is a matter of right on written, sworn application identifying the witness and that the testimony is material to the State or defense. *Coleman v. State,* No. 491–96, —— S.W.2d ——, 1997 WL 209530 (Tex.Crim. App. April 30, 1997); Tex.Code Crim.Proc. Ann. art. 24.03. Article 24.02 specifically authorizes the issuance of a subpoena duces tecum directing the witness to produce in court writings or other things in their possession. Tex.Code Crim.Proc.Ann. art. 24.02. Although the Code of Criminal Procedure does not specifically authorize the quashing of subpoenas in criminal cases, trial courts'

---

**1.** The record suggests that separate prosecutions were brought against the other defendants arising out of the same facts.

exercise of that power has been recognized as proper. *Coleman, supra.*

In addition to the statutory authority provided by Chapter 24 of the Code of Criminal Procedure, and by citing *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), Stangel argues that the subpoenaed records are necessary to vindicate his Sixth Amendment right of confrontation. He also argues that the records should be produced as exculpatory material under the control of the State. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Martin responds that the trial court clearly abused its discretion in denying her motion to quash because 1) the records are declared privileged by statute, 2) the documents sought are immaterial, and 3) the subpoenas violate her constitutional rights of privacy.

■ The Sixth Amendment contains two clauses relevant here, the confrontation clause and the compulsory process clause. The confrontation clause provides two rights to criminal defendants: the right physically to face those who testify against him, and the right to conduct cross-examination. *Delaware v. Fensterer,* 474 U.S. 15, 18–19, 106 S.Ct. 292, 293–94, 88 L.Ed.2d 15 (1985). The United States Supreme Court has held that the confrontation clause protects a defendant's *trial* rights and are inapplicable to proceedings occurring prior to trial. *Pennsylvania v. Ritchie,* 480 U.S. 39, 52, 107 S.Ct. 989–99, 998, 94 L.Ed.2d 40 (1987). When state-imposed restrictions on defense cross-examination of witnesses prevent inquiry into areas which are otherwise proper, such as the witnesses bias or motive, the court has intervened. *Id.* at 53–54, 107 S.Ct. at 998–1000; *see also Davis v. Alaska,* 415 U.S. at 308, 94 S.Ct. at 1105. However, the Court has expressly held that *Davis* did not create a right of pretrial discovery, *Ritchie,* 480 U.S. at 52, 107 S.Ct. at 998 noting that "[t]he ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 53, 107 S.Ct. at 999. Under these authorities, we conclude the subpoenas at issue here are not required to protect Stangel's confrontation clause rights.

Stangel's statutory right to subpoena witnesses in his favor, including subpoenas duces tecum to secure documents material to his defense, arises out of the Sixth Amendment right of·compulsory process. We must, therefore, not only determine his entitlement to the documents at issue under the statute, but also from the perspective of the underlying constitutional right.

■ It is uncontroverted that Stangel's subpoena sought production of the documents before trial. The documents were not sought for the direct purpose of securing evidence to be introduced at trial, but to determine Martin's financial condition and activities during the relevant periods and look for evidence of prior or unreported payments, *i.e.,* for pretrial discovery. Martin contends that inasmuch as article 39.14 of the Code of Criminal Procedure prescribes the exclusive manner by which a defendant may obtain pretrial discovery, a defendant may not use a subpoena duces tecum for that purpose. Article 39.14 provides that a trial court may order the State "before or during" the trial of a criminal action to produce certain evidentiary items more fully described in that article. That position is supported by *State ex rel. Wade v. Stephens,* 724 S.W.2d 141 (Tex.App.—Dallas 1987, orig. proceeding). In that case, the court cited the holding in *Whitchurch v. State,* 650 S.W.2d 422, 425 (Tex.Crim.App.1983), and commented that while "Texas courts may have once possessed inherent authority to order criminal discovery, we hold that article 39.14 now defines and limits that authority," and concluded that the legislature "intended article 39.14 to constitute a comprehensive pretrial discovery statute and that criminal discovery orders must fall within the confines of that article's limited authorization." *State ex rel. Wade v. Stephens,* 724 S.W.2d at 144.

The only authority we have found even suggesting that subpoenas issued pursuant to chapter 24 of the Code of Criminal Procedure may be used pretrial is dicta appearing in *Thurman v. State,* 861 S.W.2d 96 (Tex. App.—Houston [1st Dist.] 1993, no pet.). In *Thurman,* and in upholding the use of a grand jury subpoena to obtain the results of a blood test, the court opined that "the State could have obtained the same evidence before or during trial by use of an ordinary

subpoena duces tecum, rather than a grand jury subpoena." *Id.* at 100. As support for that conclusion, the court cited article 24.02 of the Code of Criminal Procedure which authorizes the issuance of subpoenas duces tecum by the State and defense alike. Of course, should that right be available to the State, it would be available to the defense. Noting that the statement in *Thurman* was dicta, and finding the reasoning in *Stephens* more compelling as well as in accord with prevailing Texas authority, we hold that Stangel's statutory right of pretrial discovery is limited to that provided by article 39.14. That statute clearly does not provide for discovery of documents from non-party witnesses. Therefore, Stangel was not entitled to subpoena Martin's financial records under Chapter 24 of the Code of Criminal Procedure.

■ We must next determine whether Stangel's constitutional right of compulsory process requires that he have greater access to the documents at issue than that provided by statute. In *Ritchie*, the United States Supreme Court addressed a similar claim. There the defendant, Ritchie, served a subpoena on Pennsylvania's Children and Youth Services Agency (CYS) seeking records from an earlier investigation involving him. CYS refused to honor the subpoena, citing a statute declaring the records privileged and exempt from disclosure subject to specific exceptions. The trial court refused to order the disclosure.

In addressing the asserted denial of Ritchie's right of compulsory process, the Supreme Court initially noted that it had traditionally evaluated such claims under the Fourteenth Amendment's due process protections, declined to analyze whether the right of compulsory process provided protections in addition to those afforded by due process, and determined that Ritchie's claims "more properly are considered by reference to due process." 480 U.S. at 56–57, 107 S.Ct. at 1001. In that connection, the Court cited the rule explicated in such cases as *U.S. v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that "the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie,* 480 U.S. at 57, 107 S.Ct. at 1001. The Court repeated its position that "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

■ A defendant's due process right to have the State disclose favorable evidence does not create a constitutional right to discovery. *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977). Nor does it entitle the defense to conduct her own search to argue the relevance of particular information, even in the absence of a statute declaring the information confidential. *Ritchie,* 480 U.S. at 59, 107 S.Ct. at 1002. In *Ritchie,* with the observation that such a review would not prevent a defendant from requesting specific information of which he was aware and arguing the information was material to his defense, the Court determined that a defendant's due process rights would be satisfied by an *in camera* review by the trial court to determine the validity of the defendant's contentions. *Id.* at 60, 107 S.Ct. at 1002–03.

In *Thomas v. State,* 837 S.W.2d 106 (Tex. Crim.App.1992), the court was presented with a similar question. In that case, the defendant had been denied access to a recording from a local "crime stoppers" program because of a statute which deemed such records confidential. As relevant here, on appeal the Court of Criminal Appeals considered whether the failure to allow access to the records violated Thomas' Sixth and Fourteenth amendment rights.

In considering the question, the *Thomas* court quoted extensively from Justice Blackmun's concurring opinion in *Ritchie,* in which he opined that denial of discovery could violate a defendant's rights of confrontation if it limited the effectiveness of cross-examination. The Court then held that denial of discovery, either during or before trial, could violate a defendant's due process rights. *Thomas v. State,* 837 S.W.2d at 111, 112 n.

10. With relation to Thomas, and even though he conceded that he effectively impeached the State's witness even without the crime stoppers recording, the court held that the trial court's application of the confidentiality statute to totally bar Thomas's access to the information violated his due process rights. *Id.* at 113.

However, even so, rather than provide Thomas with unlimited access to the crime stoppers records, the court considered the legislative intent in encouraging reporting of crime by protecting the confidentiality of those who provide information to crime stoppers programs. As the Supreme Court did in *Ritchie,* the Court of Criminal Appeals held that a proper balance of the defendant's due process rights against the government's interest would be met by an *in camera* review by the trial court without the presence of attorneys from either the defense or the State. *Thomas v. State,* 837 S.W.2d at 114. The trial court would then be under a continuing obligation to determine if the produced information contained *Brady* material which should be revealed to the defendant. *Id.*

We must next determine the extent the *Ritchie* and *Thomas* teachings apply to this case. Parenthetically, we have not overlooked that in both of those cases, the information sought by the defense was not in the possession of the prosecution but was held by another governmental agency and here the information sought is held by a non-party witness. However, where, as here, it is clear that the witness is crucial to the State's case, we are convinced that the difference is irrelevant. *See e.g., United States v. Nixon,* 418 U.S. 683, 711, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039 (1974) (holding Sixth Amendment rights of defendant required disclosure of assertedly privileged information by president, who was not a party to the action). We also note that the *in camera* review procedures adopted in both *Ritchie* and *Thomas* were based on state statutes declaring the information confidential or privileged. Martin has similarly asserted that the records

sought by Stangel are declared confidential by statute and by her constitutional right of privacy. We must, therefore, consider those claims.

Martin cites two federal statutes as support for her position that her income tax and credit records at issue are privileged: 26 U.S.C. § 7213 in support of an asserted income tax records privilege and 15 U.S.C. § 1681 with regard to credit records. We find no such privilege in these statutes. Section 7213 of Title 26 limits the disclosure of tax records by federal, state, or other employees and has no applicability to the disclosure of those records by a taxpayer. *St. Regis Paper Co. v. United States,* 368 U.S. 208, 219, 82 S.Ct. 289, 296, 7 L.Ed.2d 240 (1961). Similarly, 15 U.S.C. § 1681 regulates the reporting and disclosure of credit information by businesses and credit reporting agencies. It provides consumers with no privilege to avoid disclosure of information about themselves. Moreover, § 1681t specifically provides that § 1681 *et seq.* does not provide any exemption from compliance with state law unless it is inconsistent with the federal act. It contains no declaration that the information is either confidential or privileged.

Martin also argues that section 30.007[2] of the Texas Civil Practice and Remedies Code establishes her right of privacy in the records. However, the statute plainly provides that "[t]his section ... does not create a right of privacy in a [financial institution] record[.]" Tex.Civ.Prac. & Rem.Code § 30.007(b) (Vernon 1997). Moreover, like the federal statutes discussed above, by its own terms, this statute only applies to records that are requested from financial institutions, and has no applicability to the production of Martin's own records.

Martin has not cited any specific provision of the federal or Texas constitutions in support of her asserted constitutional right of privacy in her financial records, and we note that those documents grant no express privacy rights. *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973); *Texas*

---

**2.** One legacy of the 74th legislature is the creation of three separate statutes designated as § 30.007 of the Civil Practice and Remedies

Code. The provision relevant here was created by the Act of June 16, 1995, 74th Leg., R.S., ch. 914, § 3, 1995 Tex.Gen.Laws 4451, 4545.

*State Employees Union v. Texas Dept. of Mental Health and Mental Retardation,* 746 S.W.2d 203, 205 (Tex.1987). They do, however, contain provisions that are recognized as implicitly creating protected "zones of privacy." *Id.* 410 U.S. at 152, 93 S.Ct. at 726; 746 S.W.2d at 205.

The United States Supreme Court has recognized several areas protected by the federal constitution's implicit rights of privacy. They include issues concerning marriage, *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823–24, 18 L.Ed.2d 1010 (1967); procreation, *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); abortion, *Roe, supra;* child rearing, *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), and family relationships, *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). In doing so, the court has declared that the constitutional guarantee of personal privacy only includes those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. *Roe,* 410 U.S. at 152, 93 S.Ct. at 726 (*citing Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)). It has not recognized a constitutionally protected privacy right in one's personal financial records.

In *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Court considered the privacy interests of patients whose prescription information was collected by the State. Finding the State's purpose in collecting the information legitimate, the Court upheld the statute at issue. Justice Stevens noted that the statute imposed on the government a duty to avoid disclosure of the information to protect the privacy interest of the patients. Without holding that this privacy interest was constitutionally protected, the Court did note that the State's statutory duty "arguably has its roots in the Constitution." *Id.* 429 U.S. at 605, 97 S.Ct. at 879.

In *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), the Court held that a criminal defendant had no privacy interests in a bank's records of his accounts with the bank. It did not, however, discuss the basis or extent of his privacy rights in his own financial records, other than to distinguish *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). *Boyd* involved the constitutionality of a statute which effectively forced one against whom certain criminal or civil forfeiture proceedings were brought to produce his private books, records and papers lest the government's allegations be taken as confessed. The Court found the statute violative of the protections afforded by the Fifth Amendment. Here, Martin has not asserted any Fifth Amendment privilege. *See e.g., United States v. Khan,* 728 F.2d 676, 678 (5th Cir.1984) (holding witness assertion of Fifth Amendment privilege is superior to defendant's Sixth Amendment rights).

Our state courts have similarly recognized constitutionally protected zones of privacy arising out of the right to practice one's religious beliefs (Art. I, § 6), to "speak, write or publish," (Art. I, § 8), not to give evidence against himself (Art. I, § 10), and protection from unreasonable searches and seizures by the government (Art. I, § 9). *Texas State Employees Union,* 746 S.W.2d at 205. Texas courts have not applied the state constitution to create privacy rights greater than those recognized in the federal constitution. *See e.g., Tarrant Co. Hosp. Dist. v. Hughes,* 734 S.W.2d 675, 679 (Tex.App.—Fort Worth 1987, no writ) (declaring identities of blood donors discoverable in civil proceeding).

With regard to the degree of protection afforded to personal financial information, an opinion of the El Paso Court of Appeals interpreting a provision of the Texas Open Records Act is instructive. Section 552.101 of the Government Code excepts from disclosure under that act information that is "considered to be confidential by law, either constitutional, statutory, or by judicial decision." Tex.Govt.Code Ann. § 552.101 (Vernon 1994). In *Apodaca v. Montes,* 606 S.W.2d 734 (Tex. Civ.App.—El Paso 1980, no writ), a bondsman's financial statement was held not to be included within that exception. *Id.* at 735–36. This holding was necessarily based on the court's determination that there was no constitutional right of privacy in that type of information.

Consideration of these authorities convinces us that the information at issue here is not declared confidential by statute nor is it

necessarily constitutionally protected by a right to privacy. However, we believe the government has an interest in protecting witnesses from undue hardship or possible harassment arising from their participation in judicial proceedings that merits an analysis similar to that used by the *Ritchie* and *Thomas* courts. For example, such an interest is recognized in the well established rule granting witnesses immunity from civil liability for statements made in a judicial proceeding. *See e.g., Hurlbut v. Gulf Atlantic Life Ins. Co.,* 749 S.W.2d 762, 767 (Tex.1987); Restatement (Second) of Torts § 588 (1977). It is based on the public policy that the benefits flowing from the uninhibited disclosure of information outweighs the harm which may result from false information. *Hurlbut v. Gulf Atlantic Life Ins. Co.,* 749 S.W.2d at 768.

There is nothing to indicate that Stangel seeks Martin's financial records for any improper purpose, such as to harass or intimidate her; however, as an appellate court, we must be mindful of the effect of our holding on other cases. We believe that an *in camera* review procedure as adopted in the *Ritchie* and *Thomas* cases would satisfy the government's interest in protecting its witnesses while satisfying Stangel's Sixth Amendment rights of confrontation and compulsory process and would properly be applicable here. However, those opinions do not specify what, if any, burden a defendant must bear to show his entitlement to an *in camera* review. Considering the burden placed on the witness and the trial court, the mere assertion that the documents are material to the defense is insufficient. In order to be entitled to an *in camera* review, the defendant must allege with specificity, how he believes the evidence is relevant to the proceeding. As a cautionary note, because the Court of Criminal Appeals has addressed the standard to be applied in attempts to subpoena records at trial, we express no opinion whether Stangel may or may not be entitled to subpoena Martin's records at trial. *See Coleman v. State,* No. 491–96, —— S.W.2d ——, 1997 WL 209530 (Tex.Crim.App. April 30, 1997).

Under the authorities we have discussed, and for the reasons we have stated, Martin's petition must be, and is, conditionally granted. Respondent is directed to issue an order quashing the subpoenas duces tecum. We are confident he will comply with that directive and the writ of mandamus will issue only if he fails to do so.