NOS. 07-08-0142-CR, 07-08-0143-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D
 
AUGUST 31, 2009
                                       ______________________________

CARLOS JOSE CORDOVA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NOS. 7397, 7398; HONORABLE LEE WATERS, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
OPINION
          In October 2006, appellant Carlos Jose Cordova was charged in two separate
indictments with aggravated robbery with a deadly weapon.


 The two charges were tried
together and the jury convicted appellant as charged. Presenting four issues, appellant
now appeals from his convictions


 and the resulting concurrent sentences of forty-five
years’ imprisonment. We will affirm the trial court’s judgments. 
Background
          Layne Conner testified he does not like banks, so he kept cash in the home in
Pampa, Texas, he shared with his wife Mae and their nine-year-old grandson. In May
2006, he had over $30,000 in cash and $5000 in checks divided among three bank bags
he kept in a locked filing cabinet in a back room of the house. Mr. and Mrs. Conner and
their grandson were visiting family in another part of the state for several days when Mr.
Conner considered buying a vehicle. He testified he wanted to make sure he had enough
cash for the purchase, so on Wednesday May 17, he called their adult daughter Mayla
Arreola, who also lived in Pampa. He told his daughter about the cash, and asked her to
open the cabinet and count the cash. Mayla testified she counted between $32,000 and
$34,000, and called her father with the count. He told her not to tell anyone about the
money. Mayla, however, told her husband and told her friend Tiffeni Martinez. Tiffeni
Martinez was close to the Conners, and had been in their home many times. Mae Conner
described her as a “second daughter.”  
          The Conners returned to their home Saturday evening, May 20. The next morning,
two masked gunmen kicked in the back door of the home. One forced Mrs. Conner to get
on the floor and held her at gunpoint with a shotgun. The other first told Mr. Conner to get
on the floor, then went directly to the back room. Mr. Conner testified he heard the
gunman open a filing cabinet drawer, and try to open the locked cabinet. The gunman
returned to Mr. Conner and told him to open the cabinet. As Mr. Conner went to a
bedroom to get the key, the gunman followed. Telling Mr. Conner to hurry, the man fired
his pistol toward a bed and threatened to shoot Mr. Conner in the heart. Mr. Conner later
discovered his grandson was hiding under that bed. 
          When the gunman told Mr. Conner he wanted the money, Mr. Conner responded,
“What money?” The gunman replied, “You know what money I’m talking about.” With his
back to the gunman, Mr. Conner opened the cabinet and gave the gunman two of the three
bank bags, containing a total of some $4900. Both gunmen left the house, again
threatening to kill Mr. Conner. They also took Mrs. Conner’s purse, which contained $800
in cash. Mr. Conner followed the robbers outside in time to hear car doors slam, and see
a “newer Jeep” drive away. 
          Mae Conner testified as follows concerning her immediate reaction to the robbery:
          Q:       What did you do then [after her husband told her the robbers were gone]?
 
          A:       Well, [Mr. Conner] had taken out the back door to see if he could see
anything. I picked up the phone. I was–I was–You know, I was shaking and
I picked up the phone and I called Mayla first, and I said “Who did you tell
about the money?” I said “We were just robbed at gunpoint.” She said
“Nobody.” I said “I’ve got to go.” And then I called 9-1-1.
 
          Q:       Why did you call Mayla first?
 
          A:       I don’t really know. I just knew that other than us, she was the only one that
knew, so I called her first to see. I really don’t know why I called her first. I
wasn’t on the phone with her just that long, long enough to say that, and I
said “I’ve got to go.” And I got up and called 9-1-1.
 
          Tiffeni Martinez is married to Andrew Martinez. They also lived in Pampa. Andrew
Martinez and appellant are cousins. Appellant then lived in Amarillo.
          A CrimeStoppers tip from Amarillo eventually led police to Priscilla Badillo. Badillo
testified at trial concerning a conversation she heard in Amarillo on the Friday before the
Sunday robbery. The conversation was between Davey Enriquez


 and another man.


 She
said the conversation involved “[s]omething about [appellant’s] cousin that . . . lived here
in Pampa had told him about some money, something about a kid and a gun, and that’s
about it.” When she heard a news report Sunday evening about the robbery in Pampa,
she recalled the conversation she had overheard on Friday.
          Another witness, Danielle Holmes, testified she lived in Amarillo and that appellant,
Enriquez and a third person came to her home on Saturday evening, May 20, while
Holmes’s neighbor Woody was there. Enriquez stayed in the car but appellant came inside
her home and talked with Woody. Appellant told Woody they were going to Pampa, and
asked if Woody was going. According to the conversation, appellant “was supposed to
keep control of the little boy and that there was a lot of money involved.” Appellant also told
Woody that appellant’s cousin had called to say that “It’s set up . . . .” Holmes talked
Woody out of going to Pampa with the others, testifying she “had a real bad feeling.”
          Holmes testified appellant returned to her home hours later, before daybreak
Sunday morning, again to speak to Woody. She again overhead part of their conversation.
Woody asked appellant, “Well, what happened?” Appellant responded, “It didn’t go as
planned.” Some time later, after Holmes had moved to another house, appellant and
Enriquez came to her house, “wanting to know who told on them.” The men told her they
had been “pulled over and questioned.” When Holmes heard news reports of the Conners’
robbery, she also concluded the reports were describing the same events she heard
appellant discuss at her home. She contacted CrimeStoppers.
          After Mayla Arreola admitted she had told her friend Tiffeni Martinez about her
parents’ hidden cash, the Pampa police detective working on the case visited with Andrew
and Tiffeni Martinez. During that visit, the detective learned that Andrew had a cousin in
Amarillo, appellant. The detective testified that Andrew said he had not spoken with his
cousin in “a year, year and a half.” Subpoenaed telephone records, however, showed
many calls between the Martinez’s phone and appellant’s in the days surrounding the
robbery, including six calls on May 19 and three on May 20, as well as several calls in days
following. 
          The Conners did not identify the robbers. Mr. Conner testified the man who went
to the back room had a “Spanish” accent and was “a lot smaller” than the larger man
holding a shotgun on his wife. Mrs. Conner testified that both men were “Hispanics” and
the one holding the shotgun on her was stockier than the other. 
Analysis
Limitation of Appellant’s Voir Dire Examination
          We begin with appellant’s second issue, by which he argues the trial court abused
its discretion by imposing limitations on his voir dire examination of the venire on the
subjects of reasonable doubt and the State’s burden of proof. 
          During voir dire, the State voiced several objections concerning appellant’s 
questioning of the panel regarding the State’s burden of proof, some of which the court
sustained. Eventually, after the district attorney and defense counsel sparred over whether
the defense was mischaracterizing the State’s voir dire, the court questioned the panel on
the presumption of innocence and the burden of proof. The court then announced, “All
right. At this time I believe the jury is sufficiently qualified regarding the burden of proof. 
We’ll need to move on to voir dire regarding the law applicable [to] other aspects of the law
that may be applicable to this case and voir dire questions regarding issues that may be
applicable to this case.” The court then advised defense counsel he had an additional
thirty minutes to voir dire. Without voicing an objection, defense counsel continued his voir
dire. On completion of voir dire, the panel was excused, and both sides informed the court
of their challenges.


 Defense counsel then stated,
 
I’d move that this venire panel be vacated and a new one brought in because
the Court shut down my voir dire and I was not able to ask the questions that
I needed to ask in order to explore and examine these venire members’
subjective perceptions about certain things and specifically the issue of
beyond a reasonable doubt. For that reason and with the Court’s treatment
of Defense Counsel in front of the venire panel, I believe it’s tainted this jury’s
perception of Defense Counsel which will affect Mr. Cordova’s right to have
a fair trial.           The court denied appellant’s motion. On appeal, appellant contends the trial court
abused its discretion by not allowing him to finish his voir dire regarding reasonable doubt
and the burden of proof. The State argues that appellant did not preserve this issue for our
review. We agree. 
          Courts have described the purposes of voir dire as (1) to develop rapport between
the officers of the court and the jurors; (2) to expose juror bias or interest warranting a
challenge for cause; and (3) to elicit information necessary to intelligently use peremptory
challenges. Dhillon v. State, 138 S.W.3d 583, 587-88 (Tex.App.–Houston [14th Dist.] 2004,
pet. stricken); S.D.G. v. State, 936 S.W.2d 371, 380 (Tex.App.–Houston [14th Dist.] 1996,
pet. denied). A trial court may impose reasonable restrictions on the exercise of voir dire
examination, including reasonable limits on the amount of time each party can question the
jury panel. Caldwell v. State, 818 S.W.2d 790, 793 (Tex.Crim.App.1991), overruled on other
grounds by Castillo v. State, 913 S.W.2d 529 (Tex.Crim.App.1995); Ratliff v. State, 690
S.W.2d 597, 597 (Tex.Crim.App.1985). We review complaints about restrictions on voir dire
for abuse of discretion. S.D.G., 936 S.W.2d at 380, citing McCarter v. State, 837 S.W.2d
117, 119 (Tex.Crim.App.1992).
 
          When a party complains of an inability to collectively question the venire, a two-part
test applies: (1) whether the complaining party attempted to prolong the voir dire; and (2)
whether the questions the party was not permitted to ask were proper voir dire questions.
See McCarter, 837 S.W.2d at 120; S.D.G., 936 S.W.2d at 380. To preserve error
concerning the manner of voir dire, appellant must point to a question the trial court did not
allow the panel to answer. S.D.G., 936 S.W.2d at 380, citing Caldwell, 818 S.W.2d at 794. 
In Wooldridge v. State, for example, a case on which appellant principally relies, counsel
was not permitted to ask a venire member what “beyond a reasonable doubt means to
you?” Wooldridge v. State, 827 S.W.2d 900, 901 (Tex.Crim.App. 1992). Appellant’s
identification in his motion of the subject “the issue of beyond a reasonable doubt” did not
advise the trial court, or a reviewing court, of the specific questions he desired to ask the
panel. That is especially true in this instance because appellant had engaged in
questioning the panel on that subject. Accordingly, we find his second appellate issue does
not present anything for our review, and it is overruled. 
Legal and Factual Sufficiency of Evidence
          We next address appellant’s last issue in which he challenges the legal and factual
sufficiency of the evidence to support his conviction for aggravated robbery. There is no
dispute the Conners were robbed; the issue is the sufficiency of the evidence supporting
the State’s theory that appellant was one of the robbers.
 
          In reviewing issues of legal sufficiency, an appellate court views the evidence in the
light most favorable to the verdict to determine whether, based on that evidence and
reasonable inference therefrom, a rational jury could have found each element of the
offense beyond a reasonable doubt. Swearingen v. State, 101 S.W.3d 89, 95
(Tex.Crim.App. 2003); Conner v. State, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001), citing
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard
for legal sufficiency review “gives full play” to the jury’s responsibility to fairly resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts. Jackson, 443 U.S. at 319; Sanders v. State, 119 S.W.3d 818,
820 (Tex.Crim.App. 2003). If, given all of the evidence, a rational jury would necessarily
entertain a reasonable doubt of the defendant’s guilt, due process requires that we reverse
and order a judgment of acquittal. Swearingen, 101 S.W.3d at 95, citing Narvaiz v. State,
840 S.W.2d 415, 423 (Tex.Crim.App. 1992), cert. denied, 507 U.S. 975,113 S.Ct. 1422, 122
L.Ed.2d 791 (1993). Circumstantial evidence is as probative as direct evidence in
establishing guilt, and circumstantial evidence alone can be sufficient to do so. Hooper, 214
S.W.3d at 9, citing Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). While each
fact need not point directly and independently to the guilt of the accused, the cumulative
force of circumstantial evidence alone may be sufficient to support a conviction. Guevara,
152 S.W.3d at 49. Finally, all evidence, whether properly or improperly admitted, will be
considered when reviewing the evidence for legal sufficiency. Johnson v. State, 967
S.W.2d 410, 411 (Tex.Crim.App. 1998). See also Wilson v. State, 7 S.W.3d 136, 141
(Tex.Crim.App. 1999).
          A factual sufficiency review considers whether the evidence supporting guilt, though
legally sufficient, is so weak that the jury’s verdict seems clearly wrong and manifestly
unjust, or evidence contrary to the verdict is such that the jury’s verdict is against the great
weight and preponderance of the evidence. Grotti v. State, 273 S.W.3d 273, 283
(Tex.Crim.App. 2008); Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006);
Watson v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006). Ultimately in a factual
sufficiency review, the appellate court must answer the single question whether, considering
all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a
reasonable doubt. Grotti, 273 S.W.3d at 283, citing Watson, 204 S.W.3d at 415. Although
an appellate court’s authority to review factual sufficiency permits the court to disagree with
the fact finder’s determinations, even to a limited degree those concerning the weight and
credibility of the evidence, the appellate court must accord them due deference. Marshall,
210 S.W.3d at 625; Johnson v. State, 23 S.W.3d 1, 9 (Tex.Crim.App. 2000). See also
Steadman v. State, 280 S.W.3d 242, 246-47 (Tex.Crim.App. 2009). When there is a
conflict in the evidence, to find it factually insufficient we must first be able to say, with some
objective basis in the record, that the great weight and preponderance of all the evidence
contradicts the jury’s verdict. Watson, 204 S.W.3d at 417. We must also discuss the
evidence that, according to the appellant, most undermines the jury's verdict. Laster v.
State, 275 S.W.3d 512, 518 (Tex.Crim.App. 2009); Sims v. State, 99 S.W.3d 600, 603
(Tex.Crim.App. 2003).
 
          A person commits the offense of robbery if, in the course of committing theft and with
intent to obtain or maintain control of the property, he intentionally or knowingly threatens
or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. §
29.02(a)(2) (Vernon 2003). A person commits the offense of aggravated robbery if he
commits robbery and uses or exhibits a deadly weapon. Tex. Penal Code Ann. §
29.03(a)(2) (Vernon 2003). “In the course of committing theft” means conduct that occurs
in an attempt to commit, during the commission, or in immediate flight after the attempt or
commission of theft. Tex. Penal Code Ann. § 29.01(1) (Vernon 2003). 
          Considering all the evidence here, we first find the jury rationally could have drawn
the same conclusion Mrs. Conner immediately drew, that is, the robbery was connected with
Mayla Arreola’s knowledge of the presence, amount, and location of the money in her
parent’s home. The jury heard both the Conners’ testimony indicating they had told no one
else about the money, yet the Conners had barely returned from their trip before robbers
arrived with the clear knowledge of the precise location of the cash.
          Second, we find the jury rationally could have drawn the same inferences Badillo and
Holmes drew, that is, what the two witnesses overheard being discussed on Friday and
Saturday were plans to rob the Conners on Sunday. Particularly in light of the
conversation’s timing just hours before the robbery, the jury reasonably could have decided
the similarity between the robbery in Pampa and the details Holmes heard mentioned in
Amarillo was more than coincidental. From the conversation, the jury also reasonably could
have believed that appellant not only knew of the robbery plan, but intended to participate.
Appellant’s statement hours later that, “It didn’t go as planned,” is a further indication he had
participated in the robbery. Enriquez’s conversation Badillo overheard on Friday did not
contain so many similar details, but did contain a statement important to this case, that
appellant’s cousin in Pampa was the source of the information about the money Enriquez
was discussing.
          Holmes testified appellant was driving his Jeep vehicle when he came to her home
Saturday evening. She identified the Jeep from a photograph shown her at trial. The
photograph was of a Jeep registered to appellant, located by police at the home of
appellant’s brother in Amarillo. When shown the same photograph, Mr. Conner testified 
it fit the description he provided police of the Jeep he saw leaving his home after the
robbery. 
          Appellant’s general physical characteristics reflected in the record are consistent with
the descriptions provided by the Conners. Information taken when appellant was booked
into jail described him as “five foot seven” and “one hundred twenty-five pounds.”


 
           Appellant’s contacts with his cousin Andrew Martinez and his wife Tiffeni on the
critical dates, coupled with Andrew’s later denial of any contact over a long period of time,
the close similarity between appellant’s Jeep vehicle and that the robbers drove, and
appellant’s later complaint to Holmes that someone “told” further support the
reasonableness of the jury’s finding of guilt.


 The State can prove identity through direct
evidence and inferences, as well as through circumstantial evidence. Earls v. State, 707
S.W.2d 82, 85 (Tex.Crim.App. 1986); Roberson v. State, 16 S.W.3d 156, 157
(Tex.App.–Austin 2000, pet. ref’d). See also Sosa v. State, 177 S.W.3d 227, 230
(Tex.App.–Houston [1st Dist.] 2005, no pet.) (identification based on an individual’s build and
other characteristics, when corroborated with additional evidence, can be legally sufficient);
Hutchison v. State, 42 S.W.3d 336, 342-43 (Tex.App.–Texarkana 2001), aff’d, 86 S.W.3d
636 (Tex.Crim.App. 2002) (recognizing same). Further, there is no legal requirement that
property stolen must be recovered in whole or in part to constitute the offense of robbery. 
Russo v. State, 228 S.W.3d 779, 794 (Tex.App.–Austin 2007, pet. ref’d), citing Chaney v.
State, 474 S.W.2d 711, 712 (Tex.Crim.App. 1972); Dean v. State, 154 S.W.2d 459
(Tex.Crim.App. 1941). 
          Viewed in the light most favorable to the verdict, we find the combined force of the
incriminating circumstances allowed the jury rationally to conclude, beyond a reasonable
doubt, that appellant was one of the robbers. Hooper, 214 S.W.3d at 9. The evidence
supporting guilt is legally sufficient.
          Evidence contrary to the verdict includes appellant’s wife’s testimony that he was at
home watching their children while she was ill in bed at the time of the robbery. Appellant
also emphasizes the Conners were unable to identify him as one of the robbers. He notes
also that witnesses gave varied descriptions of the Jeep seen the day of the robbery,


 and
that no firearm or ballistics evidence was linked to him, no DNA evidence or fingerprints
were found and none of the stolen cash was recovered. At trial, appellant attacked the
credibility of the State’s witnesses.


 The trier of fact is the sole judge of the credibility of
witnesses and may believe or disbelieve any part of a witness’s testimony. Gaines v. State,
874 S.W.2d 733, 734 (Tex.App.–Houston [1st Dist.] 1994, no pet.). Further, the trier of fact
may believe a witness even though his testimony is contradicted. Sharp v. State, 707
S.W.2d 611, 614 (Tex.Crim.App. 1986); Gaines, 874 S.W.2d at 735. We must give due
deference to the fact-finder’s determinations, particularly those determinations concerning
the weight and credibility to be given items of evidence. Johnson, 23 S.W.3d at 9. The jury
was free to disbelieve appellant’s wife’s testimony, and we cannot agree with appellant that
the inconsistencies to which he refers render the evidence presented insufficient.Viewing the entire record in a neutral light, we do not find the evidence favoring guilt
is so weak that the jury’s verdict seems clearly wrong and manifestly unjust or that, giving due
consideration to the evidence contrary to the verdict, the great weight and preponderance of
all the evidence contradicts the jury’s verdict. The evidence is factually sufficient. 
          We overrule appellant’s fourth issue.
Denial of Motions for Mistrial
          Appellant’s first issue involves statements contained in two of his jailhouse telephone
conversations, which were recorded and admitted into evidence for the limited purpose of
showing contact between appellant and Tiffeni Martinez or her husband Andrew. In one
statement the jury heard, in a conversation with Tiffeni Martinez appellant made reference
to his previous experience with a court-appointed attorney. The second statement, also made
during a conversation with Tiffeni Martinez, was a comment to the effect that Davey
Enriquez’s record was worse than appellant’s and that Enriquez’s bail would likely be a lot
higher. Appellant timely objected to admission of both statements as evidence of extraneous
offenses.


 The trial court sustained both objections, and instructed the jury to disregard the
statements, but denied appellant’s motion for a mistrial. On appeal, appellant contends the
trial court abused its discretion by denying a mistrial after the jury heard the second
statement.


 
 
          The denial of a motion for mistrial is reviewed under the standard of abuse of
discretion. Webb v. State, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007); Lusk v. State, 82
S.W.3d 57, 60 (Tex.App.–Amarillo 2002, pet. ref’d), citing Trevino v. State, 991 S.W.2d 849,
851 (Tex.Crim.App. 1999). A trial court does not abuse its discretion when its decision is
within the zone of reasonable disagreement. Wead v. State, 129 S.W.3d 126, 129
(Tex.Crim.App. 2004); Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op.
on reh’g). It is presumed the jury will obey an instruction to disregard. Nichols v. State, 754
S.W.2d 185, 200 (Tex.Crim.App. 1988). Testimony referring to extraneous offenses thus can
be rendered harmless by an instruction to disregard it, unless it is so clearly calculated to
inflame the minds of the jury and is of such a nature as to suggest the impossibility of
withdrawing the impression produced. Lusk, 82 S.W.3d at 60, citing Kemp v. State, 846
S.W.2d 289, 308 (Tex.Crim.App. 1992). Accordingly, a mistrial is appropriate only when the
event is “so emotionally inflammatory that curative instructions are not likely to prevent the
jury from being unfairly prejudiced against the defendant.” Id. at 60. 
          We find no abuse of discretion in the trial court’s denial of a mistrial. There is nothing
especially inflammatory about the references the jury heard to appellant’s prior experience
with a court-appointed attorney and appellant’s “record.” The statements of which appellant
complains are of the nature courts have found curable by instructions to disregard. In
Tennard v. State, 802 S.W.2d 678, 685 (Tex.Crim.App. 1990), the court found a prompt
limiting instruction given after a witness referred to the defendant’s prior prison time cured any
error. The same conclusion was reached in Barney v. State, 698 S.W.2d 114, 125
(Tex.Crim.App. 1985), in which the court determined that an instruction to disregard a
reference to appellant’s status as an “ex-con” sufficiently cured any error. The court noted
that an accused may not be tried for some collateral crime or for being a criminal; however,
not every improper response requires reversal and, except in extreme cases, if a timely
objection to the remark is sustained, and the trial court instructs the jury to disregard, the error
is cured. Id. Likewise, in Evans v. State, 643 S.W.2d 157, 161 (Tex.App.–Austin 1982, no
writ), the court found error was cured by an instruction to disregard when an officer testified
that the victim was shown a second photographic lineup because the defendant had been
implicated as a member of a robbery team. See also Kemp, 846 S.W.2d at 308.
          Appellant contends the court’s instructions to disregard were ineffective because too
much time elapsed between the jury’s reception of the objectionable statements and the
court’s instructions. We disagree. In both instances, the record reflects the evidence was
heard by the jury, the court considered objections, heard argument, ruled on the objections
and then gave instructions to the jury. Although the jury was removed from the courtroom on
the second instance and the amount of time that elapsed is not clear from the record, the
court gave the instruction to disregard immediately on the jury’s return to the courtroom after
a recess.


 The instructions were given as promptly as possible under the circumstances,
and we find their presumed curative effect here was not allayed. Cf. Fuller v. State, 827
S.W.2d 919, 926 (Tex.Crim.App. 1992) (instruction given morning after objectionable
reference to collateral offense too late to cure error by itself).
          We overrule appellant’s first issue.
Denial of Due Process by Refusing to Exclude Evidence
          At appellant’s behest, before Danielle Holmes testified she was subjected to voir dire
examination outside the jury’s presence, concerning the circumstances under which she
overheard the first conversation between appellant and Woody on May 20. She told the court
part of the conversation she overheard took place inside her home. She said appellant and
Woody left the house at a point, however, and the rest of their conversation took place at the
curb alongside appellant’s vehicle. Holmes testified she had a security camera mounted
outside her home at the time, and it had the capability to transmit sound, as well as video
images. The camera was wired into her television. Holmes said when appellant and Woody
went outside during their conversation, she turned up the volume control on her television
because she wanted to hear what they were saying. By this means, she said, she heard
appellant make some of the incriminating statements to which she later testified.
 
          Shortly before trial, appellant caused a subpoena duces tecum to be issued to Holmes,
requiring her to appear at trial, and to bring with her the audio and video equipment. Holmes
did not bring the equipment to trial, and told the court her security system did not record its
video or audio transmissions and the camera hardware had been stolen. Appellant objected
that allowing her to testify about the curbside conversation without allowing him the
opportunity to test the equipment by which she claimed to have heard the conversation
deprived him of a fair trial. The court overruled appellant’s objections, and allowed Holmes
to testify to the extent it did not require expert or specialized knowledge.
           By his third issue, appellant reiterates his contention he was denied due process of law
by the trial court’s refusal to exclude Holmes’s testimony to the contents of the curbside
conversation. In considering a trial court’s ruling on the admissibility of evidence, we
determine whether the trial court abused its discretion. Montgomery, 810 S.W.2d at 372. A
trial court abuses its discretion when it acts without reference to any guiding rules and
principles. Id. Further, an appellate court must uphold the trial court’s ruling if it is reasonably
supported by the record and is correct under any theory of law applicable to the case. State
v. Ross, 32 S.W.3d 854, 856 (Tex.Crim.App. 2000).
          Appellant cites article 24.02 of the Code of Criminal Procedure, which provides that
if a witness possesses any instrument or writing or other thing desired as evidence, a
subpoena may specify that evidence and direct the witness to produce it in court. Tex. Code
Crim. Proc. Ann. art. 24.02 (Vernon 1989). We held in Martin v. Darnell, 960 S.W.2d 838,
841 (Tex.App.–Amarillo 1997, no pet.) that a defendant’s right under the statute to secure
evidence material to his defense arises out of the Sixth Amendment right to compulsory
process.


 As was the case in Martin, 960 S.W.2d at 842, the record here compels the
conclusion appellant was not denied any right given him by article 24.02. By its terms, article
24.02 applies to things in the possession of a witness. Holmes told the court the equipment
appellant sought had been stolen. 
          We next consider whether due process required the trial court to exclude Holmes’s
testimony despite the inapplicability of article 24.02. See Martin, 960 S.W.2d at 842
(examining whether constitutional right required that defendant have greater access to
documents sought than that provided by statute). Appellant treats the issue as involving a
restriction of the right to compulsory process, citing Washington v. Texas, 388 U.S. 14, 87
S.Ct. 1920, 18 L.Ed.2d 1019 (1967) and Coleman v. State, 966 S.W.2d 525 (Tex.Crim.App.
1998). Appellant’s contention also bears similarity to those discussed in Pennsylvania v.
Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982) (referring to case
law “in what might loosely be called the area of constitutionally guaranteed access to
evidence”) and Thomas v. State, 837 S.W.2d 106 (Tex.Crim.App. 1992), all involving
defendants who were deprived in some manner of access to or use of evidence. In some
instances, the deprivation is treated as a violation of the right of confrontation. See, e.g.,
Ritchie, 480 U.S. at 51, 107 S.Ct. at 998. The Supreme Court also has noted the confluence
of its analysis of compulsory process claims and due process protections. Ritchie, 480 U.S.
at 56, 107 S.Ct. at 1001; Valenzuela-Bernal, 458 U.S. at 872, 102 S.Ct. at 3449 (Court has
“borrowed much of our reasoning with respect to the Compulsory Process Clause . . . from
cases involving the Due Process Clause”). Here, so far as the record shows, the equipment
appellant sought was no longer available to Holmes when it was subpoenaed. This factor
distinguishes appellant’s case from Martin. 960 S.W.2d at 840; see also Dixon v. State, No.
03-01-00459-CR, 2002 WL 31206210, *2 (Tex.App.–Austin, October 3, 2002 pet. ref’d)
(mem. op., not designated for publication) (distinguishing Thomas by noting information there
sought by defendant was known to exist). 
          After considering the authorities we have cited and others, we conclude that factor,
together with one or more of the following additional factors, takes appellant’s claim outside
the requirements of due process and of the Compulsory Process Clause: (1) so far as the
record shows, not only was the equipment not available, it always was in the hands of
Holmes, and its unavailability in no way resulted from any State action, see Ritchie, 480 U.S.
at 43, 107 S.Ct. at 994 (state child abuse law made information sought confidential); Thomas,
837 S.W.2d at 109 (statute then prohibited production of Crime Stoppers records); (2) the
record provides no basis to evaluate whether the equipment’s availability would have resulted
in evidence material or favorable to appellant, see Washington v. Texas, 388 U.S. at 16, 87
S.Ct. at 1922 (undisputed that excluded testimony would have been relevant and material);
and (3) appellant’s cross-examination of Holmes was not limited by the trial court, see Ritchie,
480 U.S. at 52-54, 107 S.Ct. at 999-1000 (evaluating contention under Confrontation Clause). 
We thus conclude the admission of Holmes’s testimony concerning appellant’s statements
she overheard, despite her failure to produce the mechanical means by which she said she
overheard them, did not violate appellant’s due process or other constitutional rights. We
overrule appellant’s third issue.
Conclusion
          Having overruled each of appellant’s issues, we affirm the judgment of the trial
court. 
 
                                                                           James T. Campbell

                                                                                     Justice

 
 
Publish.

 
 
Quinn, C.J., not participating.